FARKAS, Appellant,

v.

DETAR, Appellee.

[Cite as *Farkas v. Detar* (1998), 126 Ohio App.3d 795.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 18271.

Decided March 25, 1998.

*Timothy H. Hanna,* for appellant.

*David W. Hilkert,* for appellee.

DICKINSON, Presiding Judge.

Plaintiff Dorothy Farkas has appealed from an order of the Summit County Common Pleas Court that awarded her $9,796.53 for her personal injury claim

against defendant James Detar, with whom she was involved in an automobile collision. She has argued that (1) the trial court incorrectly allowed a defense expert medical witness to testify about his opinion that plaintiff did not suffer from thoracic outlet syndrome, because his opinion was not based on facts perceived by him or on facts admitted into evidence, (2) the trial court incorrectly prevented her from cross-examining the defense expert medical witness regarding a doctor's chart note, and incorrectly refused to admit the chart note into evidence, (3) the trial court incorrectly allowed defendant to "cross-examine plaintiff with a medical report prepared by a nontestifying witness," and (4) the trial court's damage award was against the manifest weight of the evidence.[1] This court affirms in part and reverses in part the judgment of the trial court because (1) plaintiff has not demonstrated that the testimony of the defense expert medical witness was in violation of Evid.R. 703, (2) plaintiff has not shown that the trial court abused its discretion in not allowing cross-examination regarding, or admission of, the chart note, (3) plaintiff has not shown that the cross-examination with the medical record was improper, and (4) the damage award was against the manifest weight of the evidence.

I

Defendant's negligence was not an issue at trial. On June 20, 1990, plaintiff was driving with her two children along a highway construction zone. Defendant was driving his automobile behind her, with his two children as passengers. Plaintiff stopped because the traffic in front of her had stopped. Defendant was momentarily distracted by his children and did not notice that traffic had stopped in front of him until it was too late to avoid a collision. He slammed on his brakes, but collided with plaintiff's car. Her car then hit the car in front of her. No serious damage was sustained by any of the automobiles, and all drivers drove away from the scene after the police came and investigated. After leaving, plaintiff ran some errands. After several hours, however, she and her children went to a hospital emergency room because, according to her testimony, although she had had only a headache immediately following the collision, by evening she had started having neck pain and her children were complaining of pain as well. She was x-rayed, given pain medication, and given a cervical collar.

On April 17, 1992, plaintiff filed a complaint for damages against defendant. This matter was tried before a jury beginning November 18, 1996. Plaintiff testified that, between the collision and the trial, she had had pain in her neck, shoulders, and arms. She still had continuing pain in her neck, right shoulder, right arm, and right hand. She testified about various activities in which she

---

1. Defendant's assignments of error have been consolidated for ease of discussion.

could no longer engage, such as lifting heavy objects, playing sports, and performing some everyday household tasks. She was eventually diagnosed with, among other conditions, reflex sympathetic dystrophy and thoracic outlet syndrome. The jury returned a verdict for plaintiff in the amount of $9,796.53. Plaintiff timely appealed to this court.

## II

### A

Plaintiff's first assignment of error is that the trial court incorrectly allowed a defense expert medical witness to testify about his opinion that plaintiff did not suffer from thoracic outlet syndrome, because his opinion was not based on facts perceived by him or on facts admitted into evidence. Evid.R. 703 provides:

■ "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."

As long as an expert bases an opinion at least in major part on facts or data perceived by him or admitted into evidence Evid.R. 703 has been satisfied. See *State v. Solomon* (1991), 59 Ohio St.3d 124, 126, 570 N.E.2d 1118, 1119–1120.

In a videotaped deposition of the defense expert medical witness, played at trial, the following exchange took place on direct examination:

"Q. OK. Now Doctor, in addition to having the opportunity to meet with [plaintiff] and take a history from her, and to examine her, perform the various tests, which you've described to the folks on this jury, did you also have the opportunity to review some documentation that related to the care and treatment that [plaintiff] had received prior to the time that she presented herself in your office?

"A. There was extensive documentation and I reviewed it on that date.

"Q. OK. And Doctor, just by way of for instance or example as opposed to going through each item thoroughly, could you tell the folks on the jury what items you were given prior to your meeting with [plaintiff]?

"A. I had consultation notes and histories from physicians, there were many."

A short while later, the following took place, still during direct examination:

"Q. All right. Now Doctor, you've also told the folks on the jury about two forms of thoracic outlet syndrome. One is neurogenic and the other vascular. Do you have an opinion, Doctor, based upon the opportunities that you had to speak with [plaintiff], to examine her, and based upon your experience as a, as a neurologist, your educational background, do you have an opinion based upon a

reasonable degree of medical and scientific probabilities as to whether or not [plaintiff] suffers from thoracic outlet syndrome?

"First of all, do you have an opinion?

"[Plaintiff]: [2] Objection.

"A. I have an opinion.

"Q. And Doctor, would you tell the folks on this jury what your opinion is based upon a reasonable degree of medical and scientific probabilities?

"[Plaintiff]: Objection.

"A. My opinion is there is no evidence for the presence of thoracic outlet syndrome."

On cross-examination of the same witness, the following occurred:

"Q. OK. Doctor, would it be fair to say that your opinion that [plaintiff] does not suffer from a thoracic outlet syndrome, or from a reflex sympathetic dystrophy is based principally upon your physical examination of September 26th, 1996?

"A. Yes and no, depending upon which of the entities we're speaking of.

"Q. OK. Let's talk about thoracic outlet first of all.

"A. OK.

"Q. Would that, would your opinion be based principally upon your physical examination of September 26th, 1996?

"A. No."

Plaintiff did not follow up with any questions about what the principal basis of that opinion was.

■ Plaintiff has argued that the above exchanges show that the defense expert relied principally on facts not perceived by him and not admitted into evidence to form his opinion that she did not suffer from thoracic outlet syndrome. Plaintiff's logic, however, is faulty. The most that is shown by the above excerpts is that (1) the expert reviewed extensive documentation of plaintiff's previous medical care and treatment, and (2) he did not base his opinion that she did not suffer from thoracic outlet syndrome principally on his physical examination of her. Just because he reviewed extensive documentation not in evidence does not necessarily mean that it was the principal basis for his opinion. Besides performing a physical examination of plaintiff and reviewing records not

---

2. In excerpts from the transcripts, the word "Plaintiff" or "Defendant" appearing in brackets to identify a speaker refers to that party's attorney.

admitted into evidence at trial, the expert also took a history from her and reviewed several medical records that were admitted into evidence.[3] In addition, his testimony on direct examination was that his opinion was based on speaking with plaintiff, examining plaintiff, and his professional experience and background. This suggests that his opinion may have been principally based on the history he took from plaintiff.

Plaintiff, in her reply brief, has asserted that the expert "in fact, testified that his opinion regarding 'thoracic outlet syndrome' was NOT 'principally based' upon his single physical examination which he conducted on September 26, 1996 * * * but was based upon his 'review of the provided medical records to a great extent' * * * which consisted of 'extensive documentation' * * * not admitted in evidence." If plaintiff's assertion were true, it might have supported her position. The quote plaintiff has relied on, however, has been taken out of context. The expert testified about such a "review of the provided medical records" only in response to a question from plaintiff's counsel that was unrelated to the subject of the expert's opinion about whether plaintiff suffered from thoracic outlet syndrome:

"Q. And after your examination on September 26, you authored the written report that we've been discussing?

"A. Yes.

"Q. And that report sets forth the entire history that you took on September 26th, 1996?

"A. It sets forth the history that I recalled of the interaction at the time I did the dictation, which was within a 30 minute time frame after I saw the patient.

"Q. Is there anything in that report that you recall or your record would reflect that is not included in the history?

"A. Yes.

"Q. OK. Can you tell us what that is?

"A. My review of the provided medical records to a great extent. It was not something that [plaintiff] discussed with me. The history is what she tells me, but in addition my review of the paper documentation would be, some of the review would be annotated in the medical record."

Plaintiff's assertion that this excerpt demonstrates the expert's principal reliance on medical records not properly admitted into evidence is without merit.

---

**3.** These included results of a bone scan study, a nerve conduction test, a thoracic outlet syndrome study, and a vascular study, which were plaintiff's exhibits at trial.

This excerpt demonstrates only that the expert included in his written report some information he obtained from medical records provided to him.

It was plaintiff's burden to establish that the expert, in forming his opinion that plaintiff did not suffer from thoracic outlet syndrome, relied principally on facts not perceived by him and not properly admitted into evidence, in violation of Evid.R. 703. This she has not done. Plaintiff never asked the expert whether nonadmitted documents formed the principal basis for his opinion, and this court, therefore, has no way of ascertaining whether that was the case. Given plaintiff's inability to establish the principal basis of the expert's opinion, and the fact that there were a patient history and several documents admitted in evidence, on any of which the expert could have relied principally, plaintiff has not met this burden. Her first assignment of error is overruled.

### B

Plaintiff's second assignment of error is that the trial court incorrectly prevented her from cross-examining the defense expert medical witness regarding a doctor's chart note, and incorrectly refused to admit the chart note into evidence. According to plaintiff, because the chart note formed part of the basis for the expert's opinions, the trial court's decisions violated Evid.R. 703 and 705. Evid.R. 703 provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."

Evid.R. 705 provides:

"The expert may testify in terms of opinion or inference and give his reasons therefor after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise."

The medical record in question, allegedly a chart note by one of plaintiff's treating physicians, was, according to plaintiff, among the many documents defendant's expert stated he had reviewed. Plaintiff's position is that, because the chart note formed part of the basis for the expert's opinion, she should have been allowed to cross-examine the expert with it and have it admitted into evidence so that it could aid the jury in assessing the validity of the expert's opinion. As this court concluded in its disposition of plaintiff's first assignment of error, however, showing that the expert reviewed some medical records, even if the review included the chart note, did not establish that the expert relied on those records. In fact, the expert even testified during his deposition that he did not find all of the documents he was given to review to be significant or important for his assessment of plaintiff. Plaintiff did not establish whether the expert had

seen this chart note, remembered it, had relied on it, or had found it at all significant when he was assessing plaintiff's condition.

In addition, the trial court informed plaintiff's counsel that it had sustained defendant's objection to plaintiff's cross-examination of the defense expert on the issue of the chart note because plaintiff questioned the expert by referring to "Dr. Mok's note of April 5th, 1994," a reference the trial court decided was too vague to provide the court and the jury with notice of what document he meant:

"THE COURT: The reason I sustained the objection is because the record is extremely vague as to what you are talking about.

"[Plaintiff]: It isn't vague, Your Honor. 'Do you have Dr. Mok's note of April 5th, 1994?' How more precise can you get? I have a chart note from Dr. Mok which he testified he should have reviewed and is totally inconsistent with his opinion.

"[THE COURT]: There is still no identifiable record there. The record is absolutely vague. I don't know what you are talking about.

"Tim, don't look at this from the standpoint of somebody that was there and looking at the record. Look at it from the standpoint of the judge and the jury that is not there. What are you talking about?

"[Plaintiff]: I'm talking about Dr. Mok's chart.

"[THE COURT]: I don't know that."

Plaintiff has not addressed the vagueness issue, except to assert that "the note in question was clearly identified."

■ It is generally within a trial court's discretion to determine what evidence will be admitted and what questions may be asked during cross-examination. See *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056, 1058; *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 100, 407 N.E.2d 490, 493. Plaintiff has not shown that the trial court abused its discretion in not allowing cross-examination regarding, or admission of, the chart note. Plaintiff's second assignment of error is overruled.

## C

Plaintiff's third assignment of error is that the trial court incorrectly allowed defendant to "cross-examine [plaintiff] with a medical report prepared by a nontestifying witness." Plaintiff has based her argument on her assertion that the report was hearsay, and cross-examining a witness with hearsay is reversible error.

During trial, the following took place when defendant was cross-examining plaintiff:

"Q.  Mrs. Farkas, the first doctor that you saw after this accident was—or one of the first doctors was a Dr. Felix, wasn't it?

"A.  I didn't see him because of the accident.

"Q.  Mrs. Farkas, you didn't see Dr. Felix because of the accident?

"A.  Right.

"Q.  Mrs. Farkas, you went to Dr. Farkas and you complained to him about various problems?

"A.  Dr. Farkas?

"Q.  Excuse me.  You went to see Dr. Felix and—

"A.  I already had an appointment with him for something else.

"Q.  And you complained to him about a variety of problems, didn't you?

"A.  I just complained in conversation.

"Q.  Well, Mrs. Farkas, isn't it a fact that you, before your being represented by Mr. Hanna, that [you] were represented by Attorney Jim Campbell?

"[Plaintiff]:  Objection.

"THE COURT:  Overruled.

"Q.  Isn't that right?

"A.  Yes.

"Q.  And isn't it a fact that Dr. Felix prepared a medical/legal report for Mr. Campbell within several months after this accident?

"[Plaintiff]:  Objection. May we approach?

"THE COURT:  Let's have the court reporter.

"(The following side-bar discussion was had.)

"[Plaintiff]:  This is a hearsay problem.

"THE COURT:  This is a personal injury case.  There is a waiver of any medical privilege.

"[Plaintiff]:  We are talking about hearsay, about a medical report issued by another doctor, when it was kept out during [other doctors' depositions].

"THE COURT:  If she went to another doctor for treatment of any condition after this accident, that's admitted.

"[Plaintiff]:  But the fact that they issued a report.  What is in that report is not—

"THE COURT: You waived the privilege when you filed the lawsuit.

"[Plaintiff]: What about hearsay?

"THE COURT: It's not hearsay. The questions is, did the doctor prepare a report.

"[Plaintiff]: If he starts making statements concerning things in the report, that is not hearsay?

"[Defendant]: It all depends on what I say.

"THE COURT: I don't know what is in the report. We don't have the report.

"[Plaintiff]: That is the problem.

"THE COURT: We got to have it.

"[Defendant]: I have it. We are going to have it. I got it.

"[Plaintiff]: Then call Dr. Felix. This is clearly improper.

"THE COURT: I don't know whether he is going to bring him in or not. I don't know what is going on here, but I know right now the question asked is proper. Overruled.

"Q. Mrs. Farkas, by March of the year 1991 Dr. Felix was writing reports about your accident and about injuries that you claimed were attributable to that accident, isn't that a fact?

"[Plaintiff]: Objection.

"THE COURT: If she knows.

"Q. Isn't that a fact?

"THE COURT: Overruled.

"A. I think he wrote a report.

"Q. It was March of the year 1991, right?

"A. I don't know.

"(Defendant's Exhibit H was marked for identification.)

"Q. Mrs. Farkas, showing you what has been marked as Defendant's Exhibit H—

"[Plaintiff]: Objection, Your Honor.

"THE COURT: Let's have the court reporter.

"(The following side-bar discussion was had.)

"THE COURT: All right. Right now he has not offered the report in evidence. What is the reason for your objection?

"[Plaintiff]: He was reading it in front of the jury. He is referring to it in front of the jury. He has marked it as an exhibit in front of the jury.

"Unless you've got a video camera here, you don't realize what is going on. I want it clear on the record that he has a handful of documents, wrote Dr. Felix's name on the board and he is about to cross-examine the witness with hearsay.

"That is wrong. It was kept out during [the other doctors' depositions].

"THE COURT: As of right now he hasn't done anything wrong.

"[Defendant]: I haven't.

"THE COURT: And I don't know what is coming next. I'm not going to rule that that is objectionable based upon the anticipation of what the next question might be.

"[Plaintiff]: Him asking questions, walking around with an exhibit with that doctor's name on the board. I mean, obviously you don't realize what is going on here.

"THE COURT: He has the right to comment that your client failed to call a witness not equally available to both parties. He has the right to bring that out, a medical witness not equally available to both parties.

"[Plaintiff]: I will tell you what. What you are doing in my opinion is bringing in the arbitration award.

"[Defendant]: No.

"[Plaintiff]: You are getting into what was submitted at the arbitration.

"THE COURT: I don't know what is coming next. I will have to take them one at a time. Overruled.

"Q. Mrs. Farkas, directing your attention to what has been marked as Exhibit H, can you tell the folks on the jury whether you have ever seen that before prior to today's date?

"[Plaintiff]: Objection.

"THE COURT: Overruled.

"A. I don't know if I have. I don't remember.

"Q. You honestly don't remember?

"A. No, I don't.

"Q. Mrs. Farkas, wasn't it your contention early on in this case that you suffered injuries to your jaw and that you were going to need surgery to correct that condition?

"A. I never said I was—

"Q. To need surgery?

"[Plaintiff]: Objection.

"THE COURT: Overruled.

"Q. Mrs. Farkas, isn't it a fact that after this accident you went to Dr. Felix and you complained to him about what you perceived to be TMJ problems?

"A. I did have a problem.

"[Plaintiff]: Objection.

"THE COURT: Overruled.

"A. I did have a problem and I was treated for it, and I still have a popping in my jaw every time I open my mouth.

"Q. In fact, you went to see Dr. Felix and Dr. Felix prepared that letter for Mr. Campbell and that letter for Mr. Campbell was sent to Mr. Detar's lawyer, wasn't it?

"[Plaintiff]: Objection.

"A. How would I know that?

"THE COURT: Overruled."

That was the extent of defendant's cross-examination of plaintiff regarding the medical report at issue.

■ Hearsay, as defined by Evid.R. 801(C), is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." At no time during the cross-examination was any statement from the report offered by defendant in evidence. Defendant was merely asking plaintiff whether she had visited this doctor, what conditions she had discussed with him, whether and why the doctor had written a report, and whether she recalled the report. Just because the report was in the courtroom, and just because it may have contained the information that plaintiff had visited the doctor and complained of a jaw problem, did not mean that plaintiff could not be properly questioned about her independent recollection of those same facts. Plaintiff has not even demonstrated that she was cross-examined with hearsay evidence, much less that there was prejudicial error. Her third assignment of error is overruled.

D

■■ Plaintiff's fourth assignment of error is that the trial court's damage award was against the manifest weight of the evidence. For support, plaintiff has argued that all of the expert medical witnesses who testified at trial agreed

that she was suffering from chronic pain syndrome as a direct and proximate result of the automobile collision at issue, that the amount of the damages awarded her was equal to the medical expenses she had incurred, and that there was no evidence that any of her medical expenses were not necessary and reasonable as a direct and proximate result of the collision. According to plaintiff, because there was such overwhelming evidence that plaintiff suffered from chronic pain syndrome as a direct and proximate result of the collision, the failure to award her damages for pain and suffering was against the manifest weight of the evidence. " '[A] reviewing court can reverse a judgment upon an assignment of error involving the weight of the evidence only when the verdict is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice * * *.' " *Royer v. Coblentz Local School Dist. Bd. of Edn.* (1977), 51 Ohio App.2d 17, 20, 5 O.O.3d 138, 140, 365 N.E.2d 889, 892, quoting *Jacobs v. Benedict* (1973), 39 Ohio App.2d 141, 144, 68 O.O.2d 343, 344–345, 316 N.E.2d 898, 901. Plaintiff, in asserting that all of the expert medical witnesses "testified that [plaintiff] suffer[ed] from a 'chronic pain syndrome' as a result of the automobile collision," has pointed only to testimony by defendant's expert medical witness. This court is not aware of any testimony by either of plaintiff's experts regarding chronic pain syndrome; instead, according to the testimony of those two witnesses, plaintiff suffers from thoracic outlet syndrome and reflex sympathetic dystrophy. Evidence of chronic pain syndrome in particular, therefore, was not overwhelming, since only defendant's expert testified about it. Evidence of the other two conditions could not be deemed overwhelming either, since defendant's expert witness contested that plaintiff suffered from them.

The fact that all three experts testified that plaintiff suffers from some kind of chronic condition involving pain as a direct result of the collision, however, did render the evidence of pain and suffering overwhelming, and that supports the crux of plaintiff's challenge. Plaintiff's experts both testified that the medical expenses plaintiff incurred in their treatment of her were necessary and reasonable, and were directly caused by the collision. Defendant offered no evidence to contradict those assertions and, in fact, offered evidence through its own expert that plaintiff did suffer some kind of chronic pain due to the collision.

It can only be concluded that the jury believed that plaintiff's medical treatment was a direct and proximate result of the collision, because it awarded her the expenses for that treatment. Plaintiff and all three experts testified that she suffered chronic pain from the collision. Nothing in the record supported a finding that she suffered no pain caused by the collision or that her medical expenses were not reasonable. The jury's award that reimbursed plaintiff only for her medical expenses and failed to account for at least some pain and

suffering was, therefore, so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice. See *Crosby v. Lenart* (Apr. 19, 1995), Wayne App. No. 2896, unreported, 1995 WL 230895; *Vanbuskirk v. Pendleton* (Jan. 18, 1980), Crawford App. No. 3–79–14, unreported, 1980 Ohio App. LEXIS 11232, at *11–12; and *Hendrickson v. Maenle* (Dec. 20, 1991), Lucas App. No. L–90–366, unreported, 1991 WL 270409. Plaintiff's fourth assignment of error is sustained.

## III

Plaintiff's first three assignments of error are overruled, and her fourth assignment of error is sustained. The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

QUILLIN and SLABY, JJ., concur.