OPINION
Appellant, Penelope L. Vieira, filed a complaint against appellee, Charles K. Addison, in the Lake County Court of Common Pleas for injuries sustained in an August 1, 1995 automobile accident.
The case was referred to an arbitration panel, which ruled in favor of appellant for $8,500. Appellee appealed the arbitration award to the court of common pleas. Appellee admitted to fault and a jury trial was held to determine the amount of damages he owed.
At trial, the evidence revealed that on August 1, 1995, at about 6:00 p.m., appellant was traveling westbound on Fairview Avenue in a 1984 Buick Regal owned by her son's fiancee. The car was stopped behind the car in front, which was stopped to turn left on Grand Avenue. At that time, appellee, who was traveling behind appellant in his 1993 Ford Escort at about fifteen to twenty miles per hour, struck the back of the car appellant was driving. Appellant testified that she felt an immediate, sharp pain in her neck and shoulders. She requested an ambulance and was transported, on a backboard, to Lake West Hospital. At the hospital, X-rays were taken and appellant was given pain relievers.
The next morning, because she was still in pain, appellant went to see Dr. John Kavlich. Dr. Kavlich testified that upon examining appellant he discovered that she had tenderness and decreased range of motion in both her neck and back. Dr. Kavlich diagnosed appellant as having an acute cervical strain, a right shoulder sprain, and a lumbosacral sprain. His treatment included giving her an anti-inflammatory injection, prescribing anti-inflammatory medication and muscle relaxants, applying hot and cold packs, stimulation, and physical therapy. Between August 1 and October 20, 1995, appellant had thirteen physical therapy sessions. On October 20, Dr. Kavlich told appellant that there was nothing more he could do for her. Dr. Kavlich's charged appellant $3,277 for his services.
Dr. Kavlich testified to his visits with appellant as follows:
 Q: "Did you have a chance to discuss with her what brought her to seek your care and treatment?
 A: "Pain, as is stated here by my medical assistant, pain in neck and low back pain to the buttocks.
* * *
 Q: "Would you tell the jury a little bit about how she progressed as she treated with you as a patient?
 A: "Well, again, referring to my office notes, August 11th she was minimally better. She was still having pain, especially to her neck.
 "August 14th she requested follow-up. At that time she was still having — because she was still having frequent headaches. She was having headaches about three times per day. At that point I explained to her that the headaches are from neck spasms. * * *
Q: "Was she pain-free on October 20th?
 A: "Nope. She was still having neck spasms and headaches about one times per day. * * *
 Q: "Doctor, do you have an opinion, based upon a reasonable degree of medical probability whether Penny Vieira will continue to suffer from these injuries in the future?
 A: "Whether she will continue to suffer from — yes, I do.
Q: "What is that opinion, Doctor?
 A: "That she will continue to suffer from problems to the neck and also to the low back."
Appellant testified that, at the time of the trial, she was, for the most part, free from pain, but that the pain would sometimes return, especially when doing housework, lifting heavy objects, camping, or lifting her young nieces. Appellee did not present any evidence to dispute appellant's pain, but only attempted to show that the medical bills were too high and that appellant had a previous history of migraine headaches and a subsequent injury that may have caused her pain.
In its instructions to the jury, the trial court gave the following guidance for determining an amount to compensate appellant:
 "In determining the amount, you will consider the nature and extent of the injuries; the effect upon physical health; pain that was experienced, the ability or inability to perform usual activities; and the reasonable costs of the necessary medical and hospital expenses incurred[.]"
With regard to pain and suffering, the trial court instructed the jury that: "[t]here is no recognized unit value for pain and suffering. Compensation for pain and suffering is entirely within your province in the event you find for the plaintiff."
The jury ruled in favor of appellant for $3,277, the exact amount of her medical bills. Appellant filed a motion for a judgment notwithstanding the verdict and a new trial. In her motion, she argued that the jury's verdict was against the manifest weight of the evidence because it was obvious that the jury ignored the undisputed evidence presented about her pain and suffering. The trial court denied appellant's motion.
Appellant appeals the trial court's denial of her motion and raises the following assignments of error for our review:
 "The trial court erred to the prejudice of plaintiff-appellant in denying her motion for new trial."
In their assignment of error, appellant asserts that the trial court abused its discretion by not granting her motion because the jury's verdict, for the exact amount of her medical bills, was against the manifest weight of the evidence by not compensating her for undisputed pain and suffering. Appellant cites many cases from other jurisdictions to support her position. Appellee counters that appellant's argument is "erroneously based upon the single fact that Plaintiff-Appellant is unhappy with the result."
Compensatory damages for injuries include direct pecuniary loss, such as hospital and other medical expenses immediately resulting from the injury, or loss of time or money from the injury, loss due to the permanency of the injuries, disabilities or disfigurement, and physical and mental pain and suffering. See 4 Restatement of the Law 2d, Torts (1965), Section 903 et seq. Some of these elements of damages, such as the costs and expenses of the injury and loss of time from employment, entail only the rudimentary process of accounting to calculate. Other elements such as pain and suffering are more difficult to evaluate in a monetary sense. The assessment of such damage is, however, a matter solely for the determination of the trier of fact because there is no standard by which such pain and suffering may be measured. Fantozzi v. Sandusky Cement Prod. Co. (1992), 64 Ohio St.3d 601,612, 597 N.E.2d 474. Based on the undisputed evidence before the jury and the instructions by the trial court, the jury could not ignore evidence of appellant's pain and suffering. Without jury interrogatories, a logical conclusion would be that the jury determined her pain and suffering was worth $0. Because the jury awarded appellant compensation for her medical bills, it must necessarily have determined that the injuries for which she sought medical treatment were proximately caused by appellee's negligence and that medical care was reasonable and necessary. Appellant sought medical care solely because she was in pain; thus, the jury must have believed that appellee caused appellant some pain and suffering.
Numerous decisions from other jurisdictions have held that awards for the exact amount of medical bills for injuries involving pain and suffering, without any award for pain and suffering, are against the manifest weight of the evidence. See,Farkas v. Detar (1998), 126 Ohio App.3d 795, 711 N.E.2d 703;Boldt v. Kramer (May 14, 199), Hamilton App. No. C-980235, unreported; Iames v. Murphy (1995), 106 Ohio App.3d 627,666 N.E.2d 1147; Slivka v. C.W. Transport, Inc. (1988), 49 Ohio App.3d 79,550 N.E.2d 196. Therefore, the jury's failure to determine appellant's claim for pain and suffering is not a consistent verdict and is against the manifest weight of the evidence. Appellant's assignment of error has merit; the trial court erred and abused its discretion by denying appellant's motion for a judgment notwithstanding the verdict or for a new trial. We reverse and remand this case for a new trial solely to determine an amount to be awarded Penelope L. Vieira for pain and suffering.
JUDGE ROBERT A. NADER
FORD, P.J.,
O'NEILL, J. concur.