DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Lucas County Court of Common Pleas. Following a jury trial, the trial court entered a verdict against appellants, Linda and Richard Dewey, in favor of appellee, Walter L. Olson, M.D. For the following reasons we affirm the judgment of the trial court.
On appeal, appellants raise the following assignments of error:
 "I. The trial court erred in permitting the Defendant's expert, John Wald, M.D., to testify.
 "II. The trial court erred in permitting defense counsel to use a letter from Joseph L. Fermaglich, M.D.
 "III. The trial court erred in not permitting the Plaintiffs' expert, Ronald Wade, M.D., to testify as to the significance of a lack of plaques on an MRI study performed in 1993 as it relates to the presence or absence of plaques in MRI studies performed in 1986.
 "IV. The court erred in not confining defense counsel, on re-cross examination of Dr. Wade, to only those items which had been discussed during the re-direct examination.
 "V. The trial court failed to remain impartial during the trial of the case."
On October 27, 1995, appellants brought a medical malpractice claim against appellee. Specifically, appellants claim that appellee misdiagnosed Mrs. Dewey with Multiple Sclerosis ("MS") in 1981. As a result of this diagnosis, appellant asserted that between 1981 and 1993, Mrs. Dewey was subjected to numerous uninsured hospitalizations, drug therapies and other treatment. Due to the substantial medical expenses, appellants claimed that they were compelled to file for bankruptcy in 1986. The matter came for jury trial on December 8, 1997. On December 12, 1997, the jury found for appellee and stated that appellee was not negligent with respect to the care he rendered Mrs. Dewey. As such, the trial court entered a judgment for the defense.
In their first assignment of error, appellants argue that the trial court erred in permitting appellee's expert, John Wald, M.D., a neurologist, to testify. Specifically, appellants argue that Dr. Wald was not qualified as an expert witness, pursuant to Evid.R. 702 and 703, for the following reasons: (1) he was not a physician in 1981 when the events forming the basis of the claim arose; and (2) the facts on which Dr. Wald's opinions were based were hearsay and did not meet the standard on which an expert opinion testimony can be received.
Prior to the conclusion of appellants' case, the trial court referenced a motion for the exclusion of Dr. Wald's testimony; however, we note that no written motion was filed in the trial court. Nevertheless, the trial court overruled the motion in limine and ruled that Dr. Wald would be permitted to testify. Upon the conclusion of appellants' case, the defense called Dr. Wald to testify.
On appeal, appellee argues that appellants failed to object to Dr. Wald's qualifications at the time he was called to testify. Appellants respond that the following constitutes a satisfactory objection:
 "Q. And I note on your curriculum vitae as of 1980, you were just graduating high school and didn't become a neurologist and a professor at the University of Michigan in neurology until some time after that. How is it — do you feel comfortable and qualified to evaluate and render opinions regarding what the standard of care required of a neurologist in diagnosing and treating multiple sclerosis in that period of time that you weren't practicing medicine?
"MR. MOHR: Objection. Calls for a legal conclusion.
"THE COURT: I'll make that decision.
"A. Yes."
It is not apparent to this court that the above language is an objection to Dr. Wald's qualifications to testify. Nevertheless, we will assume for the sake of argument that this objection was sufficient to preserve the issue on appeal.
Evid.R. 601(D), General Rule of Competency, states that every person is competent to be a witness except:
 "(D) A person giving expert testimony on the issue of liability in any claim asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care, or treatment of any person by a physician or podiatrist, unless the person testifying is licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state, and unless the person devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school. This division shall not prohibit other medical professionals who otherwise are competent to testify under these rules from giving expert testimony on the appropriate standard of care in their own profession in any claim asserted in any civil action against a physician, podiatrist, medical professional, or hospital arising out of the diagnosis, care, or treatment of any person."
Clearly, the rule does not require that an expert must have been licensed to practice medicine and surgery at the time the events in the case occurred. Rather, he is only required to be licensed at the time of his testimony. Dr. Wald clearly satisfied the competency requirements of Evid.R. 601(D) and Evid.R. 702. The fact that Dr. Wald was not practicing medicine in 1981 may affect his credibility with the jury, but it does not affect his competency to testify or the admissibility of his expert opinion. See DiSilvestro v. Quinn (Dec. 31, 1996), Lake App. No. 95-L-061, unreported.
Appellants additionally argue that Dr. Wald's testimony was not based upon personal knowledge because he did not receive a complete copy of Mrs. Dewey's eleven hospitalizations. Rather, Dr. Wald was provided a summary of those records which were prepared by defense counsel. On the other hand, Dr. Wald testified that based upon his review of the medical records he was provided, the depositions, and documentation, he had sufficient information to render an opinion to a reasonable probability as to whether appellee departed from the accepted standard of care in his diagnosis of Mrs. Dewey.
The record is void of any objection concerning this testimony. "Ordinarily, errors which arise during the course of a trial, which are not brought to the attention of the court by objection or otherwise, are waived and may not be raised upon appeal." Stores Realty Co. v. City of Cleveland, Bd. of Bldg.Standards (1975), 41 Ohio St.2d 41, 43, citing, Snyder v. Stanford
(1968), 15 Ohio St.2d 31; Oney v. Needham (1966), 6 Ohio St.2d 154
. Accordingly, we find that appellants waived their right to object to what evidence Dr. Wald reviewed in rendering his expert opinion.
Therefore, we find that the trial court did not err in permitting appellee's expert, John Wald, M.D., to testify. Appellants' first assignment of error is not well-taken.
In their second assignment of error, appellants argue that the trial court erred in permitting defense counsel to cross-examine appellants' expert, Ronald Wade, M.D., with a letter authored by Joseph Fermaglich, M.D. Appellee responds that Dr. Fermaglich's letter was a business record and, alternatively, given that Dr. Wade considered it prior to rendering his expert opinion, was a proper subject for cross-examination.
"It is generally within a trial court's discretion to determine what evidence will be admitted and what questions may be asked during cross-examination." Farkas v. Detar (1998),126 Ohio App.3d 795, 802, citing Rigby v. Lake Cty. (1991),58 Ohio St.3d 269, 271; O'Brien v. Angley (1980), 63 Ohio St.2d 159,163. Our review is limited to whether the trial court abused its discretion. State v. Finnerty (1989), 45 Ohio St.3d 104, 107. An abuse of discretion is more than mere error of law; it "implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
Dr. Wade testified that he reviewed Dr. Fermaglich's letter and disagreed with Dr. Fermaglich's opinion concerning the standard of care provided by appellee. Dr. Wade further testified that after receiving Dr. Fermaglich's letter, Dr. Wade decided to act as an expert in appellants' case.
In support of their argument, appellants rely on Greenv. City of Cleveland (1948), 150 Ohio St. 441; Dorsten v. Lawrence
(1969), 20 Ohio App.2d 297; Hytha v. Schwendeman (1974), 40 Ohio App.2d 478; and Mastran v. Urichich (1988), 37 Ohio St.3d 44.Green, Dorsten, and Mastran, each held that statements concerning the nature of the accident, or who was at fault, were not admissible under the business records exception to the hearsay rule because such statements made no reference to the patient's treatment. In Hytha, a letter of diagnosis of one doctor was contained in another doctor's record. The court in Hytha held that the letter was not admissible under the business records exception to prove the truth of the matter asserted because the proper foundation was not laid to establish that the letter was made in the regular course of the business of such doctor. Upon review of these cases, we find them to be distinguishable from the facts in this case because Dr. Fermaglich's letter neither contained statements regarding any underlying accident, nor was it offered to establish that Mrs. Dewey had MS.
Dr. Fermaglich's letter was kept in Mrs. Dewey's record at the Toledo Clinic; however, his statements clearly were not given in furtherance of Mrs. Dewey's treatment. Nevertheless, we find that, in the manner they were used in the cross-examination of Dr. Wade, Dr. Fermaglich's statements were not offered to prove the truth of the matter asserted; rather, they were used to establish why Dr. Wade, in his own words, "reluctantly" agreed to be an expert witness for appellants. As such, we find that the trial court did not abuse its discretion in allowing the use of Dr. Fermaglich's letter during the cross-examination of Dr. Wade.
Additionally, we find that any possible error in allowing cross-examination on Dr. Fermaglich's letter was harmless. Even without Dr. Fermaglich's opinions, appellee presented ample testimony concerning appellee's adherence to the applicable standard of care. Moreover, we note that on redirect, appellants' counsel thoroughly examined Dr. Wade concerning his disagreement with Dr. Fermaglich's opinions and the bases therefore. Accordingly, we find appellants' second assignment of error not well-taken.
In their third assignment of error, appellants argue that the trial court erred in not permitting appellants' expert, Dr. Wade, to testify as to the significance of a lack of plaques on a magnetic resonance imaging ("MRI") study performed in 1993 as it related to the presence or absence of plaques in MRI studies performed in 1986.
Three MRI studies were performed on Mrs. Dewey's brain, in May 1986, October 1986, and January 1993. The 1986 MRI studies were unavailable for Dr. Wade's review. Plaques often form in the brain and spinal column in persons suffering from MS. Once these plaques form, they do not disappear. Appellants' counsel attempted to illicit testimony from Dr. Wade concerning the absence of these plaques in Mrs. Dewey's 1993 MRI study. Specifically, appellants' counsel proffered that Dr. Wade would testify that, because he did not observe plaques on the January 1993 MRI, to a reasonable degree of medical certainty, they also would not have been present on the previous MRI studies.
The trial court allowed Dr. Wade to testify that once plaques appear, they do not disappear, and that there were no plaques in 1993; however, the trial court would not allow Dr. Wade to opine whether, specifically, plaques would have been present in the 1986 MRI studies. The trial court found such testimony to be speculative.
Insofar as Dr. Wade never actually examined the 1986 MRI studies, we find that the trial court did not abuse its discretion in precluding the proffered testimony. Accordingly, we find appellants' third assignment of error not well-taken.
In their fourth assignment of error, appellants argue that the trial court erred in not confining defense counsel, on recross-examination of Dr. Wade, to only those items which had been discussed during redirect. Specifically, appellants objected to appellee's counsel's questions concerning Mrs. Dewey's present diagnosis, his opinion as to the proper initial diagnosis, characteristics of fibromyalgia, and how the Toledo Clinic keeps records of patients' charts.
The scope of cross-examination lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case, and will not be disturbed absent a clear showing of an abuse of discretion. State v. Acre (1983),6 Ohio St.3d 140, 145. "The scope of rebuttal testimony is limited by the evidence adduced by the opposing party." Nickey v. Brown
(1982), 7 Ohio App.3d 32, 35. See, also, Micham v. Micham (Sept. 30, 1998), Lucas App. No. L-97-1308, unreported. "To have abused its discretion, the trial court must have acted in a manner that was `grossly violative of fact and logic so as to demonstrate perversity of will, defiance of judgment, undue passion, or extreme bias.'" Micham, citing, Deans v. Allegheny Internat'l.(USA) Inc. (1990), 69 Ohio App.3d 349, 352.
On redirect, Dr. Wade criticized Dr. Fermaglich's opinions regarding appellee's treatment of Mrs. Dewey, her diagnosis, and Dr. Fermaglich's failure to note the lack of certain symptoms, conditions, and objective findings. Based upon our review of recross, we find that the questions posed by appellee's counsel did not go beyond the scope of redirect. Because Dr. Wade disagreed that Mrs. Dewey had MS, it was appropriate to allow appellee's counsel to question him concerning what ailment Mrs. Dewey, in fact, did suffer. Insofar as Dr. Wade opined that Mrs. Dewey's initial diagnosis was incorrect, it was also appropriate to allow appellee to inquire regarding what symptoms Mrs. Dewey had that could have been attributable to the ailment Mrs. Dewey was currently diagnosed as having. Finally, because appellants referred to Dr. Fermaglich's letter, which was contained in the Toledo Clinic's report, it was appropriate to allow questions concerning the manner in which the Toledo Clinic report was maintained. Accordingly, we find that the trial court did not abuse its discretion in allowing questioning on the matters about which appellants complain. Appellants' fourth assignment of error is therefore found not well-taken.
In their fifth assignment of error, appellants argue that the trial court failed to remain impartial during the course of the trial. Specifically, appellants assert that the trial court created an anti-plaintiff atmosphere by his facial expressions, tone of voice, and improper rulings. Appellants assert that the trial court "made disparaging comments to witnesses and Plaintiffs' counsel without objection being made by defense counsel," concerning the manner in which questions were asked and the manner in which the witnesses should have been responding. Appellants also assert that the trial court "went far beyond simply sustaining or overruling [objections]" by making statements, among others, such as, "I don't think the question is proper," and "The question is very leading. Why don't you ask the question and let the witness give the answer. Do it right." Appellants further assert that the trial court interrupted counsel during closing argument and instructed him not to refer to the minimum wage, and stated to appellants' counsel during closing, "You are testifying in this case, and I don't think that's permissible."
Evid.R. 611(A) states, "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." As stated inMetropolitan Life Ins. Co. v. Tomchik (1999), 134 Ohio App.3d 765,795:
 "[U]nder Evid.R. 611, a trial court has discretion to control the flow of a trial. State v. Prokos (1993), 91 Ohio App.3d 39, 44, * * *. Since a trial court's powers pursuant to Evid.R. 611 and 614 are within its discretion, a court reviewing a trial court's interrogation of witnesses and comments must determine whether the trial court abused its discretion. Mentor-on-the- Lake v. Giffin (1995), 105 Ohio App.3d 441, 448, * * *."
We find that the trial court's instructions to witnesses were within the purview of Evid.R. 611. Additionally, it is the duty of the trial judge to enforce compliance with the civil rules. The trial court's rulings regarding improper examination of witnesses, and the explanations given for those rulings, do not demonstrate bias in this case. Furthermore, unfavorable rulings on appellants' behalf do not demonstrate bias. Finally, we find that trial court's interruption of counsel during closing arguments, regarding a subject matter the court deemed impermissible, does not establish bias.
Upon a thorough review of the record, we find that the trial court did not abuse its discretion in controlling the flow of the trial. See Evid.R. 611. Additionally, we find that the instances of alleged bias complained of by appellants are insufficient to demonstrate an "anti-plaintiff atmosphere" or prejudice to appellants. Accordingly, appellants' fifth assignment of error is found not well-taken.
On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.