[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JOURNAL ENTRY
On September 18, 2002, this Court released Price v. Rezac, Summit App. No. 20901, unreported. The printed version of that opinion contains a clerical error. Specifically, the trial court number located on page one of the opinion is incorrect.
The trial court case number in the caption, "CV2000 09 4343," is deleted and replaced with "CV2000 09 4348".
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Carl Price, appeals the decision of the Summit County Court of Common Pleas, which rendered judgment in favor of appellant in his personal injury action. This Court reverses and remands for a new trial.
 I.
{¶ 2} On October 12, 1998, appellant and appellee, Sheryl Rezac, were involved in an automobile accident. Appellee's vehicle collided into appellant's vehicle, from which appellant sustained injuries to his neck and right shoulder. Appellant visited several doctors and underwent physical therapy and surgery on his right shoulder. He incurred medical expenses through the year 2000.
{¶ 3} On September 29, 2000, appellant filed a complaint against appellee in the Summit County Court of Common Pleas, seeking compensation for the personal injuries and pain and suffering appellant incurred due to the automobile accident. Appellant's wife, Dannette Price, also brought a loss of consortium claim against appellee.
{¶ 4} The case went to trial on November 27, 2001. Appellee admitted negligence, leaving only the jury with the issue of damages. At the close of the trial, the jury awarded appellant $1,810.00 in damages, the exact amount of his medical bills from October 12, 1998, the date of the accident, until December 3, 1998. The jury awarded appellant's wife $15,000.00 for loss of consortium. Appellant's wife did not appeal her award.
{¶ 5} Appellant timely appealed and has set forth two assignments of error for review.
 II. FIRST ASSIGNMENT OF ERROR {¶ 6} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT BY ENTERING JUDGMENT ON THE JURY'S VERDICT AWARDING ONLY THE PLAINTIFF-APPELLANT'S MEDICAL EXPENSES INCURRED UP UNTIL DECEMBER 3, 1998. SUCH AN AWARD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE ALL OF THE EXPERT MEDICAL WITNESSES WHO TESTIFIED IN THE CASE OPINED: THAT THE PLAINTIFF-APPELLANT EXPERIENCED PAIN AND SUFFERING AS A DIRECT AN PROXIMATE RESULT OF THE AUTOMOBILE COLLISION WHICH IS THE SUBJECT MATTER OF THIS CASE; THAT PLAINTIFF-APPELLANT'S MEDICAL EXPENSES AFTER DECEMBER 3, 1998 WERE AT LEAST PARTIALLY RELATED TO THE COLLISION; AND, THAT PLAINTIFF-APPELLANT'S INJURIES RESULTING FROM THE COLLISION WERE PERMANENT."
{¶ 7} In his first assignment of error, appellant asserts that it was error for the trial court to enter judgment on the jury's verdict, which awarded appellant damages only for medical expenses incurred up until December 3, 1998. Appellant specifically argues that the award was against the manifest weight of the evidence because all of the expert medical witnesses who testified in the case opined that: (1) appellant experienced pain and suffering as a direct and proximate result of the automobile collision which is the subject matter of this case, that (2) appellant's medical expenses after December 3, 1998, were at least partially related to the collision, and that (3) appellant's injuries resulting from the collision were permanent. This Court agrees.
{¶ 8} When evaluating whether the judgment is against the manifest weight of the evidence, this Court applies the same test in civil cases as it does in criminal cases. Tewarson v. Simon (2001),141 Ohio App.3d 103, 115. This Court must:
 {¶ 9} "Review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. An appellate court should grant a new trial only in the exceptional case in which the evidence weighs heavily against the judgment. Id.
{¶ 10} In personal injury cases, this Court has held that where a jury's award only reimburses a plaintiff for his or her medical expenses, failing to account for at least some degree of pain and suffering, that award is "so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice." Farkas v. Detar
(1998), 126 Ohio App.3d 795, 808.
{¶ 11} Appellant presented the testimony of two medical experts regarding appellant's injuries as a result of the collision with appellee. Dr. Sassano, appellant's family physician, testified concerning his treatment of appellant's injuries after the collision. When asked his expert medical opinion as to whether or not appellant's neck and right shoulder injuries were directly and proximately caused by the collision with appellee, Dr. Sassano stated: "My opinion is that the above-stated injuries are directly related to his motor vehicle accident."
{¶ 12} Dr. Pinsky, the orthopedic surgeon who operated on appellant's right shoulder to repair his torn rotator cuff, also testified concerning his treatment of appellant's injuries. Dr. Pinsky opined "To a reasonable degree of medical certainty that the injuries that I observed on [appellant] did occur as a result of the motor vehicle accident."
{¶ 13} Even the testimony of Dr. Zaas, appellee's medical expert, supported the opinions of appellant's medical experts. The following dialogue between appellant's counsel and Dr. Zaas provides his medical opinion:
 {¶ 14} "Q. Now, you would agree that [appellant] injured his neck and his right shoulder and suffered trauma to his right rotator cuff as a direct and proximate result of the collision with [appellee] which occurred on October 12th, 1998?
{¶ 15} "A. I agree with that.
{¶ 16} "* * *
 {¶ 17} "Q. And what you indicated to me last Wednesday that you were opining, was he had a partial rotator cuff tear as a result of the accident?
{¶ 18} "A. Uh-huh. I agree."
{¶ 19} All three medical experts also testified that appellant's medical expenses after December 3, 1998, were at least partially related to the collision. Dr. Sassano testified regarding appellant's medical expenses as a result of his services, including his referral for appellant to undergo physical therapy. When Dr. Sassano was asked whether those charges were directly related to the accident, he stated "My opinion is that these charges are directly related to his accident and ___ and reasonable."
{¶ 20} Dr. Pinsky testified concerning appellant's medical expenses resulting from his services, specifically appellant's right rotator cuff surgery. After being asked whether or not those expenses were a direct and proximate result of the accident, Dr. Pinsky opined, "Yes, I believe them to be reasonable expenses related to the accident."
{¶ 21} Despite being appellee's expert witness, Dr. Zaas also gave testimony favorable to appellant in regard to all his medical expenses. The following cross-examination of Dr. Zaas supports appellant's evidence that his ongoing medical expenses were related to the collision:
 {¶ 22} "Q. And if I understand what you're saying with respect to at least the medical charges in this case, you feel that all the charges up until November 21st[, 1998,] were exclusively or totally related to the accident?
{¶ 23} "A. That's correct.
 {¶ 24} "Q. And the total charges from December 3rd[, 1998,] onward were partially related —
{¶ 25} "A. That's correct.
{¶ 26} "Q. — to the accident?
{¶ 27} Lastly, all three medical experts testified that appellant's injuries resulting from the collision, specifically his right shoulder damage, were permanent. When asked his medical opinion concerning appellant's injuries sustained from the collision, Dr. Sassano stated, "My opinion is that the injuries to his right shoulder are permanent in nature." He also stated that, in his opinion, appellant's "activities of daily living are significantly affected by this motor vehicle accident."
{¶ 28} Dr. Pinsky also stated his medical opinion concerning the nature of appellant's injuries. He testified that, "To a reasonable degree of medical certainty that [appellant's] injuries are permanent as a result of that accident." He further stated that appellant does have a disability as a direct and proximate result of the accident: "`It was my impression —' and I'm reading from my notes `— that [appellant] has a permanent-partial disability related to the global rotator cuff repair of his right shoulder. This equals 50 percent loss of the function of his right arm which translates to a 20 percent total body impairment."
{¶ 29} Even Dr. Zaas testified that appellant's right shoulder injury is permanent in nature. Appellant's counsel asked Dr. Zaas' medical opinion in regard to the damage done to appellant's right shoulder in the following line of questioning:
 {¶ 30} "Q. And you agree with me that the condition to his right shoulder regardless of the good care he received from Dr. Pinsky and Dr. Sassano, that the condition of his right shoulder and his limitations and his disability are permanent in nature?
 {¶ 31} "A. Yeah. I think to some degree. I don't think he'll ever be back as good as he was before.
{¶ 32} "* * *
 {¶ 33} "Q. Would you agree to a reasonable degree of medical probability and certainty that's it's fair to say he will experience pain, stiffness and disability in his right shoulder for the rest of his natural life?
 {¶ 34} "A. I think to some degree, and the word variable is important. That's correct."
{¶ 35} In conclusion, both appellant's and appellee's medical experts provided testimony that (1) appellant's injuries were a direct and proximate result of the collision with appellee, that (2) appellant's medical expenses after December 3, 1998, were at least partially, if not completely, related to the collision, and that (3) appellant's resulting injuries were permanent.
{¶ 36} Appellee argues that appellant's torn right rotator cuff occurred not from their collision, but rather from a funeral that appellant attended shortly after the automobile accident between the parties. Appellee alleges that appellant was a pallbearer at the funeral and that appellant's right rotator cuff was torn as a result of appellant carrying the casket.
{¶ 37} Appellant testified at trial that he was not a pallbearer at the funeral and that he did not carry his father-in-law's casket, specifically because of his right shoulder injury. Appellant had two of his sons, his wife, and his mother-in-law testify about the events of appellant's father-in-law's funeral. All four witnesses personally attended the funeral, and each one testified that appellant was not a pallbearer and he did not carry his father-in-law's casket at the funeral.
{¶ 38} After careful review of the entire record, this Court finds that there is uncontroverted evidence that appellant's collision with appellee was, at the very least, partially responsible for appellant's injuries and the subsequent medical expenses he has incurred as the result of treatment for those injuries. Subsequently, the jury's verdict awarding appellant $1,810.00, the amount of only his medical expenses incurred up until December 3, 1998, without awarding pain and suffering or permanency, was against the manifest weight of the evidence.
{¶ 39} Therefore, appellant's first assignment of error is sustained.
 SECOND ASSIGNMENT OF ERROR {¶ 40} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT BY ENTERING JUDGMENT ON THE JURY'S VERDICT AWARDING ONLY THE PLAINTIFF-APPELLANT'S MEDICAL EXPENSES INCURRED UP UNTIL DECEMBER 3, 1998. SUCH AN AWARD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE THE JURY AWARDED PLAINTIFF DANNETTE PRICE FIFTEEN THOUSAND DOLLARS ($15,000) ON HER CONSORTIUM CLAIM, BUT FAILED TO AWARD PLAINTIFF-APPELLANT COMPENSATION FOR PAIN, SUFFERING AND IMPAIRMENT OF ACTIVITIES OF DAILY LIVING."
{¶ 41} In his second assignment of error, appellant asserts that it was error for the trial court to enter judgment on the jury's verdict, which awarded appellant damages only for medical expenses incurred up until December 3, 1998. Appellant specifically argues that the award was against the manifest weight of the evidence where the jury awarded appellant's wife $15,000.00 on her consortium claim, while it failed to award appellant any compensation for pain, suffering and impairment of activities of daily living.
{¶ 42} Our disposition of appellant's first assignment of error renders appellant's second assignment of error moot. See App.R. 12(A)(1)(c).
 III.
{¶ 43} Accordingly, appellant's first assignment of error is sustained. This Court reverses and remands the case to the trial court for a new trial.
BAIRD, P.J., WHITMORE, J. CONCUR.