[Cite as *Johnson v. Kehl*, 2021-Ohio-2305.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| JEREMY JOHNSON | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| KATHLEEN KEHL | : | Case No. 2020 CA 0069 |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                  Pleas, Case No. 2018CV0662


JUDGMENT:                         Reversed and Remanded


DATE OF JUDGMENT:                 July 7, 2021


APPEARANCES:

For Plaintiff-Appellant                    For Defendant-Appellee

JOHN M. GONZALES                           LYNNE K. SCHOENLING
501 South High Street                      BRUCE A. CURRY
Columbus, OH  43215                        30 Northwoods Boulevard
                                           Suite 300
                                           Columbus, OH  43235

*Wise, Earle, J.*

{¶ 1} Plaintiff-Appellant, Jeremy Johnson, appeals the October 14, 2020 jury verdict in his personal injury case heard in the Court of Common Pleas of Richland County, Ohio. Defendant-Appellee is Kathleen Kehl.

FACTS AND PROCEDURAL HISTORY

{¶ 2} On June 19, 2014, appellant was involved in a motor vehicle accident wherein appellee failed to yield as she was negotiating a left turn. At the time, appellant was approximately 49 years old. The day after the accident, appellant sought medical care for pain in his left shoulder. About two months after the accident, appellant began experiencing pain in his right shoulder. He received various medical treatments and eventually had surgery on his left shoulder in January 2020 and his right shoulder in August 2020. Appellant accumulated numerous medical bills.

{¶ 3} On September 25, 2018, appellant refiled a complaint, alleging negligence and seeking damages (a previous complaint filed in 2016 had been voluntarily dismissed). A jury trial commenced on October 2, 2020. Because appellee admitted to liability, the jury was to determine the nature and extent of appellant's injuries and any compensation due. He submitted medical bills in the amount of $151,904.34. The jury awarded appellant $12,932.46 in damages consisting of $8,432.46 in economic damages and $4,500.00 in non-economic damages.

{¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶ 5} "THE TRIAL COURT ERRED BY ADMITTING EVIDENCE OF COLLATERAL SOURCE PAYMENTS OF PLAINTIFF'S MEDICAL BILLS."

II

{¶ 6} "THE TRIAL COURT'S PROCESS TO CHOOSE ALTERNATIVE JURORS VIOLATED PLAINTIFF'S FUNDAMENTAL RIGHT TO CHOOSE A JURY."

III

{¶ 7} "THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE NUMEROUS IRRELEVANT FACTS THAT TAKEN TOGETHER PAINTED PLAINTIFF IN A NEGATIVE LIGHT AND WAS UNFAIRLY PREJUDICIAL."

IV

{¶ 8} "THE TRIAL COURT ERRED BY BARRING PLAINTIFF FROM OFFERING REBUTTAL EVIDENCE TO DEFENDANT'S MEDICAL EXPERT'S TESTIMONY AND DEFENSE COUNSEL'S OPENING AND CLOSING STATEMENTS."

{¶ 9} We will address Assignment of Error III first as we find it to be dispositive of this appeal.

III

{¶ 10} In his third assignment of error, appellant claims the trial court erred in permitting into evidence numerous irrelevant facts when taken together were unfairly prejudicial. We agree.

{¶ 11} The admission or exclusion of evidence lies in a trial court's sound discretion "so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake County*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991); *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). In order to find an abuse of

that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 12} In general, "[a]ll relevant evidence is admissible" and "[e]vidence which is not relevant is not admissible." Evid.R. 402. "Relevant evidence" "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Evid.R. 403 states the following:

> **(A) Exclusion Mandatory.** Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
>
> **(B) Exclusion Discretionary.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.

{¶ 13} Evid.R. 404 governs character evidence. Subsection (A)(3) states the following:

> **(A) Character Evidence Generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of

proving action in conformity therewith on a particular occasion, subject to the following exceptions:

(3) *Character of Witness.* Evidence of the character of a witness on the issue of credibility is admissible as provided in Rules 607, 608, and 609.

{¶ 14} Evid.R. 608 states:

**(A) Opinion and Reputation Evidence of Character.** The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

{¶ 15} Appellant argues during his cross-examination, "the trial court allowed numerous improper questions that had no relevance and served no purpose" other than to place him in a negative light. Appellant's Brief at 9. He further argues these questions, coupled with other improper questions wherein objections made were sustained, "resulted in unfair prejudice" and deprived him of a fair trial. *Id.* Appellant also complains of statements made by appellee's counsel during closing argument.

{¶ 16} A review of the complained of questions is in order.

{¶ 17} Appellee's counsel asked appellant his address. T. at 90. She then asked him where he lived before this address, and appellant stated, "I lived with my mother." *Id.* He testified he lived with his mother for about twenty-five years, moving out when he was about 54 years old. *Id.* at 92. She then asked, "Your mom actually had to evict you, didn't she?" *Id.* Appellant's counsel objected and the following discussion was held in pertinent part (T. at 92-94):

[Appellee's Counsel]: It goes to his credibility. It goes to his inability to take care of himself, maintain his own lifestyle. It goes to greed. It goes to why he's filing this lawsuit. It goes to the dollar figure he's seeking.

[Appellant's Counsel]: It goes to none of that, Judge. It's totally irrelevant. It's only to harass this gentleman. It has nothing to do with the personal injury lawsuit and it's kind of a cheap shot.

THE COURT: Well, I'll let her go a little bit, I won't - -

* * *

[Appellant's Counsel]: Judge, how is this relevant? We're in a car accident. He's got two shoulder injuries. What does it matter if he was evicted 14 times?

* * *

THE COURT: Like she says, if it's some motivation for not being truthful because he needs money then - -

[Appellant's Counsel]: So what, he needs money.

[Appellee's Counsel]: That's part of our defense.

[Appellant's Counsel]: I'm sorry, he's allowed to file a lawsuit whether he needs money or not. He can be homeless and file a lawsuit. It's prejudicial to this gentleman. It's unfair.

\* \* \*

THE COURT: How about, I guess I'd ask you to ask him why he moved out. Why don't you do it that way.

[Appellee's Counsel]: I can't ask him about the eviction?

THE COURT: Well, we'll see what he says.

[Appellee's Counsel]: I can ask that question?

THE COURT: If he denies why he moved out, if he says he wasn't then you can get into that.

{¶ 18} The trial court overruled the objection and instructed appellee's counsel to rephrase or re-ask, whereupon the following exchange occurred (T. at 95-96):

Q. Mr. Johnson, we've already established that you lived with your mom till you moved out at age 54, is that correct?

A. Correct.

Q. And that was in 2019 that you moved out, as you previously testified to?

A. I think I was 53 when I moved out. If we do, you know, follow the birthdays.

Q. Well earlier you testified under oath that you moved out in 2019 at the age of 54.  Are you changing your testimony now?

A. I was 53 or 54.

Q. In 2019 you moved out, is that correct?

A. Right, that's correct.

Q. Your mother evicted you in 2019, did she not?

A. That's correct.

Q. She actually had to file for eviction with the court, is that correct?

[Appellant's Counsel]: Objection.  Asked and answered.

THE COURT: Sustained.

{¶ 19} We note appellee's counsel did not follow the trial court's instruction to ask appellant why he moved out.  Regardless, we find the questions related to why he moved out and the eviction to be irrelevant and painted appellant in a negative light.  The jury was informed of appellant living with his mother for twenty-five years and was now on his own.  Why he moved out and the eviction are not facts that are of consequence to the determination of the action.  There was no allegation that the information being sought had a bearing on appellant's truthfulness or untruthfulness.  The trial court abused its discretion in permitting this line of questioning.

{¶ 20} Appellee's counsel asked appellant why his medical records contained different birthdates.  T. at 96.  He explained he uses alternate birthdays out of concern with identity theft.  *Id.*  Appellee's counsel again questioned him on the different birthdates and asked him, "Why would you give a fake date of birth?"  T. at 97.

Appellant objected as "[a]sked and answered" and the trial court sustained the objection stating, "He answered it." *Id.*

{¶ 21} Repeating the question was unnecessary as the point had already been made that appellant gave false birthdates. The trial court properly sustained the objection. Standing alone, we do not find any unfair prejudice to appellant.

{¶ 22} Appellee's counsel questioned appellant about the last time he was employed in 2005, nine years before the accident and fifteen years prior to trial. The following exchange occurred (T. at 98-99):

Q. And you were, worked there all the way up until 2005, correct?

A. That's correct.

Q. Do you remember when in 2005 you left?

A. In September.

Q. And you were fired, weren't you?

[Appellant's Counsel]: Objection. Relevancy.

* * *

[Appellee's Counsel]: He hasn't worked since 2005. I have a right to explore the circumstances surrounding why he's no longer working. I have a right to explore that, Your Honor. It goes to the whole theme of the defendant's case.

[Appellant's Counsel]: I'm sorry, what right have - - I'm not making a wage claim. It's not relevant whether he has a job or not. It has nothing to

do with credibility, has nothing to do with anything.  Why does she have a right to go into this?  I don't understand that.

THE COURT: I think it's important to know what, based on his statements about that he hasn't worked, I don't know that it's necessary what the reasoning is other than he was terminated, I'll let you go there, but I won't let you go any more.

{¶ 23} Thereafter, appellee's counsel continued asking appellant about his job duties in 2005 and the following exchange occurred (T. at 102-103):

Q. * * * Well, you were fired from E-Crane, is that right?

A. That's correct.

Q. Why were you fired?

A. Well that's a good question.  I wish I knew.

Q. You don't know why you were fired?

A. I would like to know, right.

Q. As you sit here today, you're telling this jury you have no idea why you were fired?

[Appellant's Counsel]: Asked and answered, Judge.

THE COURT: I mean, we've covered it.  Sustained.

{¶ 24} We note once again, appellee's counsel did not follow the trial court's instruction.  The trial court specifically said, "I don't know that it's necessary what the

reasoning is other than he was terminated," yet appellee's counsel asked him repeatedly about why he was fired.  Regardless, we find the questions related to being fired from a job in 2005, nine years before the accident, let alone why he was fired, to be irrelevant and painted appellant in a negative light.  The jury was informed of appellant not working since 2005.  Why he left employment is not a fact that is of consequence to the determination of the action.  There was no allegation that the information being sought had a bearing on appellant's truthfulness or untruthfulness.  Appellant did not make a claim for lost wages, and there was no allegation that he had ever been injured at work.  The trial court abused its discretion in permitting this line of questioning.

{¶ 25} Appellee's counsel asked appellant if he had ever been on disability to which he responded in the negative.  T. at 103.  Appellant's counsel objected for relevance and the trial court properly sustained the objection.  *Id.*  We do not find any unfair prejudice to appellant.

{¶ 26} Appellee's counsel asked about two other accidents appellant had been involved in after the subject accident, one in 2015 and one in 2019.  In questioning appellant on the 2019 accident, the following exchange occurred (T. at 106):

Q. And the driver, both the front seat, the driver airbag in your car and the front seat passenger airbag in your car deployed in that accident?

A. That's correct.

Q. You were at fault in that accident, right?

A. That's correct.

[Appellant's counsel]: Objection.  Relevance.

THE COURT: Overruled.

Q. So you didn't file a lawsuit over that one, right?

[Appellant's counsel]: Objection.

THE COURT: Sustained as to that question.

{¶ 27} We find the question related to being at fault in the accident to be irrelevant and painted appellant in a negative light.  The jury was informed of appellant being in two other accidents after the subject accident.  Whether he was at fault is not a fact that is of consequence to the determination of the action.  There was no allegation that the information being sought had a bearing on appellant's truthfulness or untruthfulness.  The trial court abused its discretion in permitting this question.  The trial court properly sustained the objection on the latter question.  The case cited by appellee in support of this question, *Guthrie v. Wheeler,* 10th Dist. Franklin No. 04AP-243, 2004-Ohio-6442, is completely distinguishable.

{¶ 28} Appellee's counsel questioned appellant on where the vehicles in the subject accident came to rest and the following exchange occurred (T. at 112-113):

Q. Sure, sure.  What road was your car on when it came to a rest?

A. It was still on Fourth Street.

Q. And in fact you pushed your Honda off of Fourth Street onto Stumbo and off to the side of the road, didn't you?

A. It was pushed by an officer, and I assisted in steering the vehicle off to - - off to, all the way over into the parking lot of Huntington Bank, which is over there at the intersection.

Q. So you're denying that you pushed your vehicle on your own off of Fourth onto Stumbo - -

A. Correct.

Q. - - and off the road?  You're denying that you did that on your own?

A. Correct.

Q. So if my client takes the stand and testifies under oath that you in fact did do that on your own, is she lying?

[Appellant's Counsel]: Objection.

THE COURT: As to lying you can say - - ask it a different way.  So I'll sustain it as to lying.

Q. If my client takes the stand and testifies under oath that she visibly recalls specifically seeing you push your car off the road on your own off onto Stumbo, would she be telling the truth?

[Appellant's Counsel]: Objection.

THE COURT: That one, I'll overrule that one.  You can answer.

A. She would be incorrect.

{¶ 29} We find the question posed to appellant about appellee's truthfulness to be irrelevant.  It is up to the jury to judge the credibility of the witnesses.  The jury heard

appellant's version and would hear appellee's version when she testified. If the versions were in conflict, each party would naturally say the other party's version was "untruthful." Asking appellant about appellee's version being truthful attempts to paint him in a negative light as if he was calling her a liar. Changing the question from "is she lying" to "would she be telling the truth" is a distinction without a difference. The trial court abused its discretion in permitting this question.

{¶ 30} Appellee's counsel questioned appellant on his refusal to give her his social security number during his deposition. T. at 128. Appellant's counsel objected and the trial court overruled the objection. *Id.* Appellant agreed he refused to give his social security number. T. at 129.

{¶ 31} Appellee argues the question goes to appellant's credibility and bears on his character for untruthfulness. Appellee's Brief at 11. We find the question to be irrelevant, but do not find any unfair prejudice to appellant. He had previously testified to his concern with identity theft.

{¶ 32} In addition to the complained of questions, appellant argues appellee's counsel's closing argument was designed to inflame the jury with the running theme "people who have nothing to hide, hide nothing." October 8, 2020 T. at 28-31, 34-35, 50. We note appellant's counsel did not object to many of the remarks made during closing argument that are now raised in his appellate brief. In addition, counsel's remarks during closing argument do not constitute evidence, and "[g]reat latitude is afforded counsel in the presentation of closing argument to the jury." *Pang v. Minch,* 53 Ohio St.3d 186, 559 N.E.2d 1313 (1990), paragraph two of the syllabus.

{¶ 33} We will review certain excerpts of appellee's counsel's closing argument.

{¶ 34} Appellant objected to the following statement during closing argument (October 8, 2020 T. at 31):

He [appellant] tells you all these things he does, and about all these activities, and then he tells you that it's my client's fault.  And that she should write a big check.

[Appellant's Counsel]: Objection.

THE COURT: Overruled.

{¶ 35} This comment to the jury suggests that appellee is responsible for paying any monies awarded to appellant out of her own pocket.  On July 2, 2020, appellee had filed a motion in limine to exclude any reference whatsoever to liability insurance.  The trial court properly ruled insurance "doesn't come in."  T. at 5; October 2, 2020 T. at 36-37.  Yet, appellee's counsel thought it appropriate to insinuate that appellee would have to "write a big check."  We find this comment impermissibly suggested appellee was not insured.

{¶ 36} Appellee's counsel argued to the jury about why appellant did not call his mother to testify on his behalf and the following exchange occurred (October 8, 2020 T. at 36-37):

Now, seems to me that if you want to corroborate what Mr. Johnson is selling, which is I'm hurting like crazy and it's all Kathy Kehl's fault, and it all started in 2014, where is your mom?  That witness stand is open to

anybody and everybody.  Why didn't they bring her in?  I don't have to bring anybody in.  Don't buy that.  Don't buy that I can bring anybody in. It's not my burden to prove this case.  I don't have to prove anything.  And when they hide witnesses such as a mother who can give you eyewitness testimony - -

[Appellant's Counsel]: Objection to hiding, witnesses, Your Honor.

THE COURT: As to hide, I'll sustain that word.

{¶ 37} Later in her closing argument, in discussing each side's exhibits of medical bills, appellee's counsel stated the following (October 8, 2020 T. at 49-50):

So it would make sense why the law in Ohio says that jurors can consider the write-offs when they're totalling up medical bills that they think are related.

Now, Mr. Gonzales is gonna submit, in his exhibits, Plaintiff's Exhibit 11.  And I submit to you that all of the write-offs in these bills have been deleted.  They're not in here.  I'm gonna submit bills to you, Defendant's Exhibit H, it's actually a little thicker than this.  It's all of these bills with nothing deleted.  I'm not hiding anything from you.  They don't want you to see the write-offs - -

[Appellant's Counsel]: Again Your Honor, I'm gonna object to her - -

[Appellee's Counsel]: He deleted the write-offs.

THE COURT: Don't argue before the jury. I'll sustain it as to intention.

[Appellee's Counsel]: People who have nothing to hide, hide nothing. The bills that I'm gonna submit to you are the same bills that Mr. Johnson's gonna submit to you, except mine include the write-offs.

{¶ 38} Immediately after the sustaining of the objection on intention (hiding), appellee's counsel repeated the theme of hiding. The effect of her comments was not only to disparage appellant, but his counsel as well, which we find to be egregious.

{¶ 39} Also during closing argument, appellee's counsel referred to appellant's fault in the 2019 accident, his firing from his job in 2005, his testimony about appellee "not telling the truth," and his eviction from his mother's home. October 8, 2020 T. at 29, 30, 33, 36. All of these facts were irrelevant and had no bearing on appellant's truthfulness or untruthfulness. They were used to disparage appellant's character and paint him in a negative light.

{¶ 40} Appellant argues the cumulative effect of the trial court rulings and appellee's counsel's improper cross-examination and closing argument deprived him of a fair trial. In *Brahm v. DHSC, LLC,* 5th Dist. Stark No. 2018CA00100, 2019-Ohio-766, ¶ 61, this court stated the following:

Pursuant to the cumulative error doctrine, which is usually presented in criminal cases, a conviction will be reversed where the cumulative effect of errors in a trial deprives the defendant of the

constitutional right to a fair trial even though each individual error by itself does not constitute cause for reversal. *State v. Garner*, 74 Ohio St.3d 49, 656 N.E.2d 623 (1995). Ohio courts have found "the extension of the cumulative error doctrine to civil cases is warranted where the court is confronted with several errors, which either are harmless individually or have marginally prejudicial effects, but combine to require a new trial." *Edge v. Fairview Hospital*, 8th Dist. Cuyahoga No. 95215, 2011-Ohio-2148, 2011 WL 1744279.

{¶ 41} The issue in this case was the nature and extent of appellant's injuries caused by appellee's admitted negligence and any compensation due. These cases are generally determined on the testimony and credibility of the complaining witness and the opposing expert medical witnesses. The defense strategy in this case was to attack the complaining witness and destroy his credibility, but in so doing, it went beyond credibility and attacked his character as well outside the scope of Evid.R. 404 and 608. Appellant was placed on trial in this case.

{¶ 42} Appellee's counsel's irrelevant questions and improper remarks in this case were clearly designed to arouse the jury's passion and prejudice. It is impossible to guess the prejudicial effect the questions and remarks had on the jury. Conflicting expert medical testimony was presented on the extent of appellant's injuries caused by the accident. Wagner depo. at 42, 45, 63-65, 81; Panigutti depo. at 33-36, 45-49. Appellant submitted medical bills without write-offs up to and including the two 2020 surgeries in the amount of $151,904.34. Appellee submitted medical bills with write-

offs, and for the first six-month period following the accident, those bills amounted to $8,248.46. The jury awarded appellant $8,432.46 for past medical expenses incurred. For non-economic damages, appellee's counsel suggested $9,000.00 was fair. The jury awarded $4,500.00. "If, on a consideration of the whole case, there is room for doubt whether the verdict was rendered upon the evidence, or may have been influenced by improper remarks of counsel, that doubt should be resolved in favor of the defeated party." *Warder, Bushnell & Glessner Co. v. Jacobs,* 58 Ohio St. 77, 85, 50 N.E. 97 (1898).

{¶ 43} Upon review, we find the cumulative effect of the irrelevant evidence and the sustained objections, coupled with remarks made in closing argument, combine to require a new trial.

{¶ 44} Assignment of Error III is granted.

## I, IV

{¶ 45} Given our decision in Assignment of Error III, we find these assignments to be premature.

## II

{¶ 46} In his second assignment of error, appellant claims the trial court erred in selecting an alternate juror at random just prior to deliberations, thereby violating his right to use a preemptory challenge and pick his jury. Although this case is reversed and remanded for new trial, we will address this assignment as it pertains to jury trial procedure and may be repeated. We disagree with appellant's argument herein.

{¶ 47} Prior to deliberations, the jury consisted of nine members. In order to declare and eliminate the alternate juror, the trial court randomly drew a juror number out of a basket and eliminated the juror whose number was drawn. T. at 62-63.

{¶ 48} The record provided to this court does not indicate any objection made to the use of this procedure; therefore, appellant's argument will be reviewed under a plain error standard. Civil plain error is defined in *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus, as "error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." The *Goldfuss* court at 121, explained the following:

> In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings.

{¶ 49} Appellant argues the random selection of the alternate juror prior to deliberation violated his right to exercise his preemptory challenge afforded in Civ.R. 47(D) and pick a jury. Civ.R. 47(C) gives each side three preemptory challenges to pick a jury. Subsection (D) provides the following as to the selection of alternate jurors:

(1) *Selection; Powers.* The court may direct that no more than four jurors in addition to the regular jury be called and impaneled to sit as alternate jurors. Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath, and shall have the same functions, powers, facilities, and privileges as the regular jurors. Each party is entitled to one peremptory challenge in addition to those otherwise allowed by law if one or two alternate jurors are to be impaneled, and two peremptory challenges if three or four alternate jurors are to be impaneled. The additional peremptory challenges may be used against an alternate juror.

{¶ 50} In this case, at the start of the trial, the trial court explained its procedure for randomly selecting the alternate juror prior to deliberations from the seated jurors, and gave each side four preemptory challenges. Appellant's Brief at 2; Motion in Limine T. at 45-47.

{¶ 51} In *State v. Parish,* 4th Dist. Washington Nos. 05CA14 and 05CA15, 2005-Ohio-7109, ¶ 20, our colleagues from the Fourth District examined the issue of random alternate juror selection just prior to deliberation in the context of a criminal case and stated the following:

We further disagree with appellant's argument that the court erred by selecting the alternate at the end of the case, in violation of Crim.R. 24. As the prosecution notes, the rule does not prohibit the court from selecting the alternate juror at the end of the case. In fact, the American Bar Association recommends selecting alternate jurors at the conclusion of the case. See "American Bar Association, Adopted by the House of Delegates," February 14, 2005, Principle 11, Section G.7 (stating that "[t]he status of jurors as regular jurors or as alternates should be determined through random selection at the time for jury deliberation"). We agree with the trial court's rationale that selecting the alternate juror at the close of evidence rather than prior to opening statements encourages all jurors to pay careful attention to the evidence adduced at trial.

{¶ 52} The Fourth District reviewed this issue in 2018 and reaffirmed its analysis. *State v. Lamb,* 4th Dist. Scioto No. 17CA3796, 2018-Ohio-1405. We find there is support in Ohio, albeit limited, for the use of random alternate juror selection prior to deliberation. Further, in this case, appellant was afforded a fourth preemptory challenge.

{¶ 53} We do not find anything in the record to indicate that the trial court's procedure affected the trial's outcome in this case or "seriously affect[ed] the basic fairness, integrity, or public reputation of the judicial process."

{¶ 54} Upon review, under a plain error review, we find the trial court did not err in its procedure to designate the alternate juror in this case.

{¶ 55} Assignment of Error II is denied.

{¶ 56} The judgment of the Court of Common Pleas of Richland County, Ohio is hereby reversed, and the matter is remanded to said court for further proceedings consistent with this opinion.

By Wise, Earle, J.

Hoffman, P.J. and

Delaney, J. concur.


EEW/db