[Cite as *Ambrose v. USAA Gen. Indemn. Co.*, 2022-Ohio-2629.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

MARY AMBROSE, INDIVIDUALLY
AND ON BEHALF OF CAROLINE
AMBROSE,

        Plaintiff-Appellant,

    - v -

USAA GENERAL INDEMNITY
COMPANY, et al.,

        Defendants-Appellees.

CASE NO. 2021-P-0108

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2019 CV 00477

## O P I N I O N

Decided: August 1, 2022
Judgment: Reversed and remanded

*Florence A. Murray*, Murray & Murray Co., LPA, 111 East Shoreline Drive, Sandusky, OH 44870 (For Plaintiff-Appellant).

*C. Joseph McCullough* and *Matthew C. Notaro*, White, Getgey & Meyer Co., LPA, 6125 East Kemper Road, Suite 100, Cincinnati, OH 45241 (For Defendant-Appellee, USAA General Indemnity Company).

*Jay S. Hanson*, American Family Insurance, 1900 Polaris Parkway, Suite 200 B, Columbus, OH 43240 (For Defendant-Appellee, Morticia Williamson).

MARY JANE TRAPP, J.

{¶1} At the center of this case is an automobile-pedestrian accident in which the driver, appellee Morticia Williamson ("Mrs. Williamson") backed into the shopping cart of a pedestrian-victim, Caroline Ambrose ("Caroline"), in a Marc's parking lot in Kent, Ohio. Caroline was thrown to the ground from the impact. Mrs. Williamson admitted negligence shortly before the jury trial. Caroline's daughter, appellant, Mary Ambrose ("Ms.

Ambrose"), individually and as executrix for Caroline's estate, appeals from the judgments of the Portage County Court of Common Pleas, which dismissed her claims of negligence and loss of consortium after the jury returned a finding that the negligence of Mrs. Williamson was not the proximate cause of Caroline's injuries and denied her motion for judgment notwithstanding the verdict/motion for new trial. Caroline's underinsured motorist coverage ("UIM") insurer, USAA General Indemnity Company ("USAA General"), is also an appellee; however, the trial court granted its motion in limine to limit any mention of insurance during trial, and it agreed to be bound by the trial court's judgment.

{¶2} Ms. Ambrose raises eight assignments of error on appeal, contending that the trial court erred (1) by denying her motion for judgment notwithstanding the verdict/motion for new trial, (2) by granting USAA General's motion in limine barring any mention of insurance at trial, (3) when it overruled her objection to defense counsel's cross-examination of Ms. Ambrose, (4) by refusing to strike jurors for cause and rehabilitating jurors who displayed a clear bias against her case, (5) in ruling that direct security camera footage of the collision could not be authenticated by Mrs. Williamson, (6) by denying a highly relevant and warranted "Egg Shell" jury instruction, (7) by overruling her objections to defense counsel's "perverse" line of questioning, and (8) sustaining defense counsel's objection to testimony regarding Caroline's home health care.

{¶3} After a thorough review of the record and pertinent law, we determine Ms. Ambrose's first, third, fifth, sixth, seventh, and eighth assignments of error have merit. A review of juror interrogatory no. 1, i.e., whether Mrs. Williamson's negligence proximately caused Caroline's injuries, as well as the lack of an "Egg Shell" jury instruction, in conjunction with several evidentiary rulings allowing the improper cross-examination of

2

Ms. Ambrose on personal, out-of-pocket expenses for Caroline's medical expenses and her improper motives and disallowing self-authenticating footage of the underlying collision to be played to the jury led the jury astray. Indeed, despite the uncontroverted evidence to the contrary, the jury found that Mrs. Williamson's negligence did not proximately cause Caroline's injury. Thus, the jury's verdict is not supported by the manifest weight of the evidence, and it is apparent that the jury was misdirected from the issues that were to be decided, i.e., proximate cause and noneconomic damages, if any, from the injuries sustained in the collision.

{¶4} Lastly, the issue of USAA General's contractual obligation under the UIM policy was not a jury issue; thus, we do not find the trial court erred by granting USAA General's motion in limine to prohibit any mention of insurance at trial. Nor can we say the trial court abused its discretion for failing to strike a juror for cause where the juror, upon the court's questioning, stated he could be fair and impartial and follow the law per the court's instruction.

{¶5} The judgment of the Portage County Court of Common Pleas is reversed, and this matter is remanded for a new trial in accordance with this opinion.

### Substantive and Procedural History

{¶6} On February 18, 2018, at approximately 4:30 in the afternoon, Mrs. Williamson backed her car into Caroline's shopping cart, which pushed against her and threw her to the ground. Mrs. Williamson admitted to negligence shortly before trial.

{¶7} Ms. Ambrose, individually and on behalf of her mother, Caroline, filed a complaint in the Portage County Court of Common Pleas, alleging claims of negligence and loss of consortium against Mrs. Williamson and Caroline's UIM insurer, USAA General. Caroline, who was in her early 90s, passed away from unrelated causes while

3

the case was pending, and Ms. Ambrose was substituted as a party in her fiduciary capacity.

### *Motion in Limine*

{¶8} Several weeks before trial, USAA General filed a motion in limine to preclude any mention of the existence and/or involvement of liability insurance or UIM coverage. USAA General also sought to amend the case caption to "Mary Ambrose, et al. vs. Morticia Williamson, et al." USAA General stipulated and agreed that Caroline was an insured under a USAA policy, that the USAA policy provided for UIM coverage, and that it was obligated to pay any judgment exceeding Mrs. Williamson's liability limits up to its UIM coverage limits. USAA General agreed to be bound by the final judgment entry of the trial court.

{¶9} The trial court granted USAA General's motion in limine, in part, to limit any mention of liability and/or UIM insurance coverage, but denied its request to recaption the matter and remove USAA General's name from the caption.

### *Voir Dire*

{¶10} The case proceeded to a three-day jury trial before a magistrate. As relevant to this appeal, Ms. Ambrose contends two of the jurors showed a clear difficulty in applying the evidentiary standard "more likely than not" or "51% versus 49%" and that they should have been stricken for cause.

{¶11} A number of the prospective jurors expressed difficulty with the preponderance of the evidence or "more likely than not" concept, particularly when the concept was presented in terms of percentages. The first such juror was challenged for cause, and the trial court overruled the challenge. Ms. Ambrose exercised her first peremptory challenge to excuse that juror. A second similar challenge for cause was

4

presented for a second juror who expressed a dislike for the "51%" number, and the trial court sustained that challenge. A third juror wanted a 75% burden of proof, but upon questioning by the trial court, he said he would, "to the best of his ability," follow the instructions of the court. The cause challenge was overruled. Ms. Ambrose exercised her second peremptory challenge to a juror who did not openly express disagreement with the preponderance burden of proof.

{¶12} Finally, a cause challenge to a fourth juror who also believed the burden should be 75% was overruled after that juror, upon questioning by the trial court, said she would follow the law as instructed by the court. Ms. Ambrose exercised her third peremptory challenge to excuse that juror.

### *The Jury Trial*

{¶13} Ms. Ambrose presented several lay witnesses who related their observations as to the nature and extent of Caroline's injuries, pain and suffering, limitations on her physical activity, and recovery after the accident, including two of Caroline's six children, Ms. Ambrose and Susan Ambrose Getz; Caroline's granddaughter, Caroline Getz; as well as two of Caroline's acquaintances from her bridge group, Georgia Hilke and Sue Briers.

### *Ms. Ambrose*

{¶14} Ms. Ambrose testified that she moved from Italy with her husband to care for her mother in November 2017. She described picking up her mother from the hospital after the accident. Caroline was crying, and she was physically unable to walk on her own. For months after the accident, Caroline was unable to sleep for more than a few hours at a time, she had trouble managing her pain, she used a walker, she was unable

5

to drive, and she was unable to do the activities she enjoyed, such as golf and playing bridge. She was depressed and cried often.

{¶15} As relevant to this appeal, Ms. Ambrose contends it was error for the trial court to overrule her objection to defense counsel's cross-examination regarding out-of-pocket expenses for Caroline's medical bills. Ms. Ambrose testified that her mother was a Medicare beneficiary and that Medicare paid some of her mother's medical bills. Ms. Ambrose did not personally pay any of Caroline's medical bills.

{¶16} The magistrate sustained defense counsel's objection to any discussion of the home health care Caroline received because no records of her care were exchanged prior to trial. Ms. Ambrose objected to not being able to testify to her own recollection, regardless of whether the records were admitted.

{¶17} Ms. Ambrose also takes issue with defense counsel's "perverse" line of questioning, in which he elicited details of "the love of Ms. Ambrose's life," that is, a relationship Ms. Ambrose had during her twenties with a famous rock star. The line of questioning was designed to elicit details about Ms. Ambrose's lawsuit against the rock star's estate and to question her motives for pursuing this case since she is one of the beneficiaries of Caroline's estate.

### Plaintiff's Experts

{¶18} Ms. Ambrose also presented two expert witnesses, Caroline's treating orthopedic surgeon, Dr. Ronald C. Mineo ("Dr. Mineo"), and Kevin Rider, an industrial engineer and human factors consultant.

{¶19} Dr. Mineo determined that Caroline suffered two fractures from the incident – a pubic rami fracture and a sacral fracture. He noted in his report that the fracture suffered by Caroline typically takes six to eight weeks to heal. He also noted that Caroline

6

experienced no further complications. Her factures healed uneventfully without surgical intervention. He could not say with certainty that the injuries had a lasting effect or that they resulted in any permanent deformity or disability. He treated her following the incident and in a follow-up visit several months later in July. Three years before the accident, he had performed Caroline's partial hip replacement. In addition, he described Caroline's history of low back pain, sciatica, arthritis, osteopenia, and scoliosis.

{¶20} Mr. Rider described what he observed from viewing the security camera video and offered his opinions regarding whether Caroline had any warning that a car was about to move toward her and whether Mrs. Williamson's ability to see Caroline was obstructed. Defense counsel objected to the video being played for the jury on authentication grounds. Mr. Rider could not authenticate the video, but the line of questioning about what was depicted in the video continued with Mr. Rider giving a second-by-second narrative account. Defense counsel also cross-examined Mr. Rider extensively about the quality of the video and what could and could not be seen in the footage. The video was not played during Mr. Rider's examination.

### *Video Footage of the Collision*

{¶21} During the plaintiff's case in chief, Ms. Ambrose called Mrs. Williamson to testify. The security camera video footage of the collision from the Marc's store was also played for Mrs. Williamson, who described the accident to the jury and responded to questions regarding the video:

{¶22} "[Plaintiff's counsel]: Ms. Williamson, do you recognize your vehicle in the video?

{¶23} "[Mrs. Williamson]: Yes.

{¶24} "[Plaintiff's counsel]:  And do you recognize you already identified your vehicle in the video?

{¶25} "[Mrs. Williamson]:  Yes.

{¶26} "[Plaintiff's counsel]:  And you've seen the events within the video from viewing it just now; correct?

{¶27} "[Mrs. Williamson]:  Yes.

{¶28} "[Plaintiff's counsel]:  Does that video fairly and accurately depict what happened on that day?

{¶29} "[Mrs. Williamson]:  Yes."

{¶30} At that point, the magistrate denied plaintiff's counsel permission to publish and instructed her to ask "a few more questions" to "get the foundation." Mrs. Williamson described the accident and identified her car, Caroline, and the events depicted in the video. Ms. Ambrose asked Mrs. Williamson, "Does that video that you viewed fairly and accurately depict the scene of events?" Mrs. Williamson responded, "Yes."

{¶31} Upon Ms. Ambrose's request for permission to publish, defense counsel objected, and the magistrate sustained the objection.

### *The Defense*

{¶32} In addition to Mrs. Williamson's testimony, the defense presented the expert testimony of Dr. James Brodell ("Dr. Brodell"). Dr. Brodell opined that Caroline sustained two injuries from the collision, i.e., a skin tear and a pubic bone fracture. He testified that the fracture was a minor injury that self-healed in a matter of weeks (approximately six to eight). He believed Caroline was able to resume her normal activities and had no significant functional impairment. After the collision, he noted Caroline needed assistance for several weeks, she was prescribed a mild opioid for the pain, she utilized home

8

assistance devices, and she received home health care for one month following the collision.

{¶33} In closing arguments, defense counsel requested the jury to award appellants $10,000, or $5,000 per month for "two months of healing."

*Jury Instructions*

{¶34} Ms. Ambrose made a special request in writing to charge the jury, which was denied on the basis that there was no Ohio Jury Instruction ("OJI") on the issue and that only OJI instructions would be used.

{¶35} Ms. Ambrose proposed the so-called "Egg Shell" instruction taken from *Feterle v. Huettner*, 28 Ohio St.2d 54, 275 N.E.2d 340 (1971). The proposed instruction read: "It is the law of Ohio that the defendant takes the now deceased Caroline V. Ambrose as she finds her. By that is meant that it is no excuse to injure or hurt a person and then claim that the injury would not have happened or been as severe had that person been physically or mentally stronger, even if a particular injury may have been aggravated or might not have happened at all except for the peculiar physical condition of the injured party at the time of the incident. The defendant, Morticia Williamson bears the risk that her liability will be increased by reason of the actual physical condition of the injured party at the time of her negligent act. Even if you find that the decedent, Caroline V. Ambrose, for example had a predisposition which made her more susceptible to injury, nevertheless, the defendant is liable for the actual injury or lack of or delay in recovery, which Caroline V. Ambrose sustained as a direct result of defendant's negligence. It is not a defense that some other person of greater strength, or constitution, or emotional makeup might have been injured less, or injured differently, or recovered faster or better.

9

Case No. 2021-P-0108

It is no defense for the defendant to contend that the injured party, in this case, Caroline Ambrose, would not have been injured had she had a different condition."

### *Jury Interrogatories*

**{¶36}** The jury was given two interrogatories to answer. First, in jury interrogatory no. 1 the jury was asked: "Did Defendant's negligence proximately cause injury to the decedent, Caroline Ambrose?" If six or more of the jurors answered yes, they were to answer jury interrogatory no. 2: "What is the amount of compensatory non-economic damages sustained by the decedent, Caroline Ambrose?"

**{¶37}** Ms. Ambrose objected to the first interrogatory because a finding of proximate cause was already proven. She contended that the issue before the jury was the extent of injury as opposed to whether there was any injury. The magistrate overruled her objection, finding that the issue of proximate cause was an issue for the jury. The magistrate further noted that while Mrs. Williamson admitted negligence, she did not admit proximate cause, though there may have been testimony to that effect.

### *Jury Verdict*

**{¶38}** Six of the eight jurors found Mrs. Williamson's negligence was not the proximate cause of Caroline's injuries and signed a general verdict for the defendants. The trial court entered judgment for the defendants on all claims.

### *Judgment Notwithstanding the Verdict*

**{¶39}** Ms. Ambrose subsequently filed a "Motion for Judgment Notwithstanding the Verdict, or in the Alternative Motion for New Trial and Additur." She contended that the jury's findings were a clear indication it was led astray because the defense expert, Dr. Brodell, testified to two injuries Caroline sustained as a result of the accident. Thus,

10

the six jurors' answer to jury interrogatory no. 1, regarding proximate cause, did not comport with the evidence presented at trial, and a new trial was warranted.

{¶40} She also argued seven other grounds: 1) disparate treatment in the application of rules set out for objections that favored the defense; 2) the granting of USAA General's motion in limine; 3) exclusion of the video footage; 4) the failure to give the requested jury instruction; 5) the exclusion of any mention of therapy and home health services that Caroline received; 6) failure to sustain the challenge for cause; and 7) improper line of questioning of Ms. Ambrose's profit motives.

{¶41} The trial court found the motion not well-taken.

{¶42} Ms. Ambrose raises eight assignments of error on appeal:

{¶43} "[1.] The trial court erred by denying Plaintiff-Appellant's Motion for Judgment Notwithstanding the Verdict or in the Alternative Motion for New Trial and Additur.

{¶44} "[2.] The trial court erred by granting Defendants-Appellees' Motion *in limine* barring any mention of insurance at trial.

{¶45} "[3.] The trial court erred when it overruled Plaintiff-Appellant's objection to Defendants-Appellees' cross-examination of Mary Ambrose regarding her out of pocket expenses for medical bills.

{¶46} "[4.] The trial court erred by refusing to strike jurors for cause, and rehabilitating jurors who displayed a clear bias against Plaintiff-Appellant's case.

{¶47} "[5.] The trial court erred in ruling that direct footage of the underlying collision could not be authenticated by Defendant-Appellee.

{¶48} "[6.] The trial court erred by denying a highly relevant and warranted "Egg Shell" jury instruction.

11

**{¶49}** "[7.]  The trial court erred by overruling Plaintiff-Appellant's objections to Defendants-Appellees' perverse lines of questioning.

**{¶50}** "[8.]  The trial court erred by sustaining Defendants-Appellees' objection to testimony regarding Caroline's home health care."

**{¶51}** We address Ms. Ambrose's assignments of error out of order because several, especially when taken in conjunction, are dispositive of this appeal.

### Motion for Judgment Notwithstanding the Verdict

**{¶52}** In her first assignment of error, Ms. Ambrose contends the trial court erred in denying her "Motion for Judgment Notwithstanding the Verdict or in the Alternative Motion for New Trial and Additur."  More specifically, she argues the jury's verdict was inadequate because the jury was misled by jury interrogatory no. 1 regarding causation and thus, failed to consider an element of damages established by admitted and uncontroverted expert testimony.

**{¶53}** The Supreme Court of Ohio has explained the trial court's task in ruling on a motion for JNOV pursuant to Civ.R. 50(B) in *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 344 N.E.2d 334 (1976):

**{¶54}** "The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict.  The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied.  Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions."  *Id.* at 275.

12

**{¶55}** We review de novo a trial court's ruling on a motion for JNOV, as it presents a question of law. *Jack F. Neff Sand & Gravel, Inc. v. Great Lakes Crushing, Ltd.*, 11th Dist. Lake No. 2012-L-145, 2014-Ohio-2875, ¶ 48.

**{¶56}** Alternatively, Ms. Ambrose argued for a new trial based on the weight of the evidence pursuant to Civ.R. 59(A).

**{¶57}** In deciding a motion for a new trial based on the weight of the evidence, the trial court must weigh the evidence and pass upon the credibility of witnesses. The trial court's weighing of the evidence, however, differs from that of the jury in that it is restricted to determining whether manifest injustice has been done and whether the verdict is, therefore, manifestly against the weight of the evidence. *McWreath v. Ross*, 179 Ohio App.3d 227, 2008-Ohio-5855, 901 N.E.2d 289, ¶ 68 (11th Dist.).

**{¶58}** It is well settled in Ohio that "where the inadequacy of the verdict is so gross as 'to shock the sense of justice and fairness,' or where the amount of the verdict cannot be reconciled with the undisputed evidence in the case, or where it is apparent that the jury failed to include all the items of damage making up plaintiff's claim, the judgment entered on such verdict may be set aside by a reviewing court as being manifestly against the weight of the evidence and contrary to law." *Sherer v. Smith*, 85 Ohio App. 317, 322-323, 88 N.E.2d 426 (6th Dist.1949).

**{¶59}** As an appellate court, we review a trial court's judgment on a Civ.R. 59 motion for a new trial under an abuse of discretion standard. *McWreath* at ¶ 69. We will adhere to the principle that the granting or denying of a motion for a new trial rests within the sound discretion of the trial court and will not be disturbed upon appeal unless there has been an abuse of that discretion. *Id. See also Rohde v. Farmer*, 23 Ohio St.2d 82, 262 N.E.2d 685 (1970), paragraph one of the syllabus (where a trial court is authorized

13

to grant a new trial for a reason that requires the exercise of a sound discretion, the order granting a new trial may be reversed only upon a showing of abuse of discretion by the trial court). An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

{¶60} To the extent, however, that the trial court's decision granting or denying a new trial under Civ.R. 59(A) presents a question of law, we review the decision de novo. *Rohde* at paragraph two of the syllabus ("Where a new trial is granted by a trial court, for reasons which involve no exercise of discretion but only a decision on a question of law, the order granting a new trial may be reversed upon the basis of a showing that the decision was erroneous as a matter of law").

{¶61} After reviewing the trial testimony and the jury's verdict, we agree with Ms. Ambrose that the jury clearly lost its way. Both experts opined that Caroline suffered at least two injuries as a direct and proximate result of the collision - a skin tear and a pelvic fracture. Both experts testified that such a fracture takes at least six to eight weeks to heal. In addition, there was Mrs. Williamson's testimony regarding the collision and evidence from emergency room records documenting new injuries resulting from the accident. Testimony from her family members and friends regarding Caroline's complaints of pain and suffering and her physical limitations for a period of time was supported by medical evidence provided by both medical experts.

{¶62} In *Evans v. Hunter*, 5th Dist. Richland No. 17CA61, 2018-Ohio-1498, the Fifth District held that the trial court erred in denying appellant's motion for a new trial because there was uncontroverted evidence by all the experts, including the defense expert, that the appellant received treatment on certain dates, including the emergency

14

room, for injuries that were caused by the motor vehicle accident. *Id.* at ¶ 36. Thus, the jury awarded inadequate damages, and the verdict was not supported by competent, credible evidence. *Id.* At a minimum, the appellant "was entitled to compensation for the dates conceded by the defense expert and the jury clearly lost its way in rendering its verdict." *Id.*

**{¶63}** As the *Evans* court noted, this is not a situation where there was no evidence of injury or where the testimony of plaintiff's expert was impeached by defense counsel. *Id.* at ¶ 34. "[I]t is not only the [plaintiff's] expert, but also [the defendant's] expert, who opines, based upon medical records, imaging, and clinical findings, that he was able to render a 'pretty clear-cut opinion' that certain medical treatment was necessitated by the crash." *Id.*

**{¶64}** In *McWreath*, *supra*, we affirmed the trial court's granting of appellant's motion for a new trial after a jury awarded zero damages in a personal injury accident because there was uncontroverted evidence that appellant's injuries were caused by the automobile accident. We explained that "'[w]hen the evidence is "uncontroverted," the record reflects that there is no rebuttal evidence at all, looking at the entire range of evidence presented at trial. "Rebuttal evidence" is evidence that explains, repels, counteracts, or disproves facts given in evidence by the adverse party.'" *Id.* at ¶ 83, quoting *McCabe v. Sitar*, 7th Dist. Belmont No. 06 BE 39, 2008-Ohio-3242, ¶ 23.

**{¶65}** We recognize that a trier of fact is not required to believe an expert giving the testimony. *McWreath* at ¶ 85. Indeed, a jury is free to reject any evidence and is not required to accept evidence simply because it is uncontroverted, unimpeached or unchallenged. *See Ace Steel Baling, Inc. v. Porterfield*, 19 Ohio St.2d 137, 138, 249 N.E.2d 892 (1969). However, even if the jury did not believe Caroline's treating physician,

15

the evidence in this case still reflected that Mrs. Williamson negligently backed into Caroline's shopping cart, which pushed Caroline to the ground. She was rushed to the emergency room, where she was diagnosed with at least a skin tear and a pelvic fracture as a result of the collision. The defense medical expert conceded that these injuries were a direct and proximate result of this accident; that these injuries resulted in some pain; and that these injuries took at least six to eight weeks to heal.

{¶66} Our review of the record further reveals that there are no "objectively discernable reasons why the jury may have rejected the expert medical testimony" in this case. *Argie v. Three Little Pigs, Ltd.*, 10th Dist. Franklin No. 11AP-437, 2012-Ohio-667, ¶ 18 (finding there were several objectively discernable reasons for the jury's verdict and the jury was not required to accept the medical expert's letter as definitive evidence of causation).

{¶67} Albeit in the context of damages and not proximate cause, in *Cooper v. Moran*, 11th Dist. Lake No. 2010-L-141, 2011-Ohio-6847, we held that the trial court erred in denying the appellants' motion for a new trial where there was obvious and uncontradicted evidence that Mr. Cooper, one of the appellants, experienced pain and suffering as a result of a motor vehicle accident. *Id.* at ¶ 22. The jury's award reimbursing Mr. Cooper solely for economic damages, without at least some damages awarded for pain and suffering, was "so manifestly contrary to the natural and reasonable inference to be drawn from the evidence as to produce a result in complete violation of substantial justice." *Id.*, quoting *Farkas v. Detar*, 126 Ohio App.3d 795, 807-808, 711 N.E.2d 703 (9th Dist.1998).

{¶68} Likewise in *Berardo v. Felderman-Swearingen*, 1st Dist. Hamilton No. C-200227, 2020-Ohio-4271, the trial court abused its discretion by denying a new trial with

16

respect to one of the appellants because there was uncontroverted evidence that she experienced pain and suffering as a result of the injuries sustained in the accident. *Id.* at ¶ 33. Thus, the jury's award of medical expenses without pain and suffering was against the manifest weight of the evidence. *Id.*

{¶69} Similarly in this case, a review of the evidence reveals no controversy with respect to two separate injuries and that each was proximately caused by the collision. The jury's verdict is simply not supported by "some competent, credible evidence" going to the "essential elements of the case." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978). Clearly, the jury lost its way by failing to include all items making up the plaintiff's case and were confused as to the issue of proximate cause. *See Mensch v. Fisher*, 11th Dist. Portage No. 2002-P-0055, 2003-Ohio-5701, ¶ 16. Thus, the jury never determined the amount if any, of noneconomic damages to which Caroline was entitled from her injuries sustained in the collision.

{¶70} Ms. Ambrose's first assignment of error has merit and is sustained. The trial court should have granted Ms. Ambrose's "Motion for Judgment Notwithstanding the Verdict or in the Alternative Motion for New Trial and Additur."

**Jury Instruction**

{¶71} In Ms. Ambrose's sixth assignment of error, she challenges the trial court's denial of her proposed "Egg Shell" jury instruction.

{¶72} Requested jury instructions should be given if they are (1) correct statements of the applicable law, (2) relevant to the facts of the case, and (3) not included in the general charge to the jury. *Thompson v. Smith*, 11th Dist. Trumbull No. 2010-T-0047, 2011-Ohio-1587, ¶ 42. An appellate court is to review a trial court's decision regarding a jury instruction to determine whether the trial court abused its discretion. *Id.*

17

{¶73} In other words, when the facts and evidence in a case support the requested instruction, and the instruction is a correct statement of the law, the court may not refuse to give the instruction. However, a trial court's failure to give a proposed jury instruction is reversible error only if the party demonstrates that it was prejudiced by the trial court's refusal to give the proposed instruction. *Gevelaar v. Millennium Inorganic Chems.*, 11th Dist. Ashtabula No. 2012-A-0013, 2013-Ohio-435, ¶ 16.

{¶74} The "eggshell" or "thin skull" doctrine evolved in the context of preexisting injuries to provide that if a defendant's wrongful act causes injury, the defendant is fully liable for the resulting damage even though the injured plaintiff had a preexisting condition that made the consequences of the wrongful act more severe than they would have been for a plaintiff without a preexisting condition or injuries. *Daniels v. Northcoast Anesthesia Providers, Inc.*, 2018-Ohio-3562, 120 N.E.3d 52, ¶ 42 (8th Dist.).

{¶75} In *Daniels*, the court further explained that a "[a] tortfeasor is fully liable for any damages resulting from its wrongful act even if the victim had a preexisting condition that made the consequences of the wrongful act more severe for him than they would have been for a person without the condition. *Meyers v. Wal-Mart Stores, E., Inc.*, 257 F.3d 625, 632 (6th Cir.2001); *Figueroa-Torres v. Toledo-Davila*, 232 F.3d 270, 275-276 (1st Cir.2000); *Jordan v. Atchison, Topeka & Santa Fe Ry. Co.*, 934 F.2d 225, 228-229 (9th Cir.1991). While it is a truism that the tortfeasor 'takes his victim as he finds him,' *Binns v. Fredendall*, 32 Ohio St.3d 244, 246, 513 N.E.2d 278 (1987), the eggshell skull rule states only that the tortfeasor may not escape or reduce liability because the victim's preexisting condition made the victim more susceptible of injury from the tortfeasor's conduct." *Id.* at ¶ 43.

18

{¶76} There is no requirement that only pattern Ohio Jury Instructions must be given. Indeed, any jury instructions "'must be given when they are correct, pertinent, and timely presented.'" *Daniels* at ¶ 48, quoting *State v. Joy*, 74 Ohio St.3d 178, 181, 657 N.E.2d 503 (1995). Most fundamentally, the instructions found in Ohio Jury Instructions are not mandatory but rather are recommended instructions based primarily upon case law and statutes. *Callahan v. Akron Gen. Med. Ctr.*, 9th Dist. Summit No. Civ.A. 22387, 2005-Ohio-5103, ¶ 10.

{¶77} Taken in conjunction with jury interrogatory no. 1, dealing with proximate cause, the lack of an instruction on the "Eggshell" plaintiff prejudiced and misled the jury in this case. With the benefit of such an instruction, which was a correct statement of the applicable law, relevant to the facts of the case, and not included in the general charge to the jury, the issue of proximate cause may have been clarified and the jury not led so astray in its verdict.

{¶78} Ms. Ambrose's sixth assignment of error has merit and is sustained.

### Objections

{¶79} We address Ms. Ambrose's third, seventh, and eighth assignments of error together since they deal with various objections from both parties during various points of Ms. Ambrose's testimony. In Ms. Ambrose's third assignment of error, she contends the trial court erred when it overruled her objection to defense counsel's cross-examination regarding her own and her family's out of pocket expenses for Caroline's medical bills. In her seventh assignment of error, Ms. Ambrose contends the trial court erred by overruling her objections to defense counsel's "perverse" line of questioning regarding her motives in pursuing the instant case on behalf of Caroline's estate. In her eighth assignment of

19

error, Ms. Ambrose contends the trial court erred by sustaining defense counsel's objection to testimony regarding Caroline's home health care.

{¶80} "'The scope of cross-examination and the admissibility of evidence during cross-examination are matters which rest in the sound discretion of the trial judge. Thus, when the trial court determines that certain evidence will be admitted or excluded from trial, it is well established that the order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion.'" *Calderon v. Sharkey*, 70 Ohio St.2d 218, 222, 436 N.E.2d 1008 (1982), quoting *O'Brien v. Angley*, 63 Ohio St.2d 159, 163, 407 N.E.2d 490 (1980).

{¶81} We note that where the decision to admit evidence is a purely legal one, as it involves solely a question of law, our standard of review is de novo. *Rilley v. Brimfield Twp.*, 11th Dist. Portage No. 2009-P-0036, 2010-Ohio-5181, ¶ 56.

### *Objection to Questioning of Ms. Ambrose's Payment of Medical Bills*

{¶82} Prior to trial, the magistrate granted defense counsel's motion to allow the defense to introduce the actual charges of the medical providers, the amounts of the "write-offs" and the amounts accepted as payment in full by the medical providers. These amounts are commonly referred to as the "Robinson Bates" numbers.

{¶83} In *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195, the Supreme Court of Ohio held that "[b]oth an original medical bill rendered and the amount accepted as full payment are *admissible to prove the reasonableness and necessity of charges rendered for medical and hospital care*." (Emphasis added.) *Id.* at paragraph one of the syllabus. The court explained that "the reasonable value of medical services is a matter for the jury to determine from all relevant evidence. Both the original medical bill rendered and the amount accepted as full payment *are admissible to prove*

20

Case No. 2021-P-0108

*the reasonableness and necessity of charges rendered for medical and hospital care*."

(Emphasis added.) *Id.* at ¶ 17. The issues of the reasonableness and necessity of the

medical charges were never at issue in this case. Ms. Ambrose tactically chose not to

offer any evidence of hospital and medical expenses as an element of damages, and the

defense did not introduce expenses in its case in chief.

{¶84} However, on cross-examination, defense counsel elicited testimony from

Ms. Ambrose that she did not personally pay for any of her mother's medical bills and that

they were paid by Caroline's Medicare coverage. While attempting to cross-examine Ms.

Ambrose about what the treating physician, Dr. Mineo, told her at an office visit and

whether her mother had any other medical treatment after seeing Dr. Mineo in July 2018,

Ms. Ambrose replied that she was unsure how to respond because of the trial court's

earlier ruling precluding her from testifying about home health care. Defense counsel

interjected, "and your mother, of course, was charged for treatment that she had with

various doctors, correct?" Ms. Ambrose's counsel objected since it was outside the scope

of anything appellants had introduced. The trial court overruled the objection, and despite

repeated objections, the trial court permitted the questioning to continue about her

mother's status as a Medicare beneficiary and the fact that neither Ms. Ambrose nor any

of the family had to pay any medical bills.

{¶85} As our review reveals, this line of questioning was outside the permissible

scope of cross-examination. It was irrelevant, and prejudicial, most especially where the

jury was being asked to determine noneconomic damages, such as pain and suffering,

and not to determine the amount of hospital and medical expenses as a separate element

of damage. *See* Evid.R. 611(B). "Pain and suffering are subjective feelings, [and] the

injured person's testimony is the only direct proof of such damages. * * * Therefore, lay

21

Case No. 2021-P-0108

testimony is sufficient by itself to prove past pain and suffering damages." *Burton v. Dutiel*, 2015-Ohio-4134, 43 N.E.3d 874, ¶ 91 (5th Dist.), quoting *Youssef v. Jones*, 77 Ohio App.3d 500, 505, 602 N.E.2d 1176 (6th Dist.1991).

{¶86} In *Stone v. Patarini*, 9th Dist. Lorain No. 98CA007242, 2000 WL 799102 (June 21, 2000), the Ninth District held that the trial court did not abuse its discretion in excluding medical bills as proof of severity of injury. *Id.* at *3. The court determined that the appellant testified herself as to her pain and suffering, the extent of the medical treatment she received, and the physical limitations that resulted from her injuries, in addition to her treating physician, who testified to her injuries and the treatment involved. *Id.* Thus, the medical bills had "little probative value" to establish the extent of the appellant's injuries that was not established by other sources. *Id.*

{¶87} Similarly here, the questioning on Ms. Ambrose's payments of her mother's medical bills had little probative value in determining the amount, if any, of Caroline's pain and suffering. Further, the line of questioning was highly prejudicial and most likely sowed the seeds of confusion with discussion of economic loss in a case dealing only with non-economic loss.

### *Objection to Questioning of Ms. Ambrose's Motives*

{¶88} In her seventh assignment of error, Ms. Ambrose contends defense counsel's cross-examination regarding her love affair during her twenties with a famous rock star and her subsequent lawsuit against the rock star's estate, as well as his questioning about who stood to benefit from a jury award in this case and her personal motives for pursuit of the lawsuit, i.e., whether she was pursuing it for profit, were highly prejudicial.

22

{¶89} We agree this line of collateral questioning was, as reflected by the jury's verdict, highly prejudicial. The questioning about her relationship with the rock star and her litigation regarding his estate was irrelevant to the issues to be determined by this jury, and when combined with a line of questioning as to who would benefit from any award in this case became prejudicial, particularly in light of Ms. Ambrose's fiduciary duties as the executor of her mother's estate.

{¶90} In *Johnson v. Kehl*, 2021-Ohio-2305, 174 N.E.3d 1282 (5th Dist.), a motor vehicle accident case, the Fifth District found defense counsel's cross-examination of the plaintiff regarding why the appellant moved out of his mother's house, whether he was evicted, his previous employment that ended in termination, his driving record that involved several motor vehicle accidents, and his truthfulness to be highly irrelevant and prejudicial. Taken as a whole, the questioning resulted in cumulative error, and the case was remanded for a new trial. The court aptly remarked, "The issue in this case was the nature and extent of appellant's injuries caused by appellee's admitted negligence and any compensation due. These cases are generally determined on the testimony and credibility of the complaining witness and the opposing expert medical witnesses. The defense strategy in this case was to attack the complaining witness and destroy his credibility, but in so doing, it went beyond credibility and attacked his character as well outside the scope of Evid.R. 404 and 608. Appellant was placed on trial in this case." *Id.* at ¶ 41.

{¶91} As in *Johnson*, the line of cross-examination in this case rose beyond a challenge to Ms. Ambrose's credibility to the level of an assault on her character, which constitutes reversible error. The line was crossed when defense counsel delved into details of her relationship with the rock star and her current spouse:

23

{¶92} "Q. How are you involved with Robert Palmer's estate?

{¶93} "A. We lived together. He was separated from his wife. He divorced her, took many years to get that over with. And then we lived together in Switzerland.

{¶94} "Q. Okay. Were you with him when he died?

{¶95} "A. Yes, I was, in Paris.

{¶96} "Q. Was he engaged to Geraldine Edwards at that time?

{¶97} "A. No.

{¶98} "Q. Okay. And you were not just his housekeeper there?

{¶99} "A. No.

{¶100} "Q. All right. Were you common law married?

{¶101} "A. We were -- yeah, I was a de facto spouse. We lived together for so long.

{¶102} "Q. Okay. And you told me I think in your deposition that was your love of your life?

{¶103} "A. Yeah.

{¶104} "Q. Yeah?

{¶105} "A. Yes.

{¶106} "Q. Right? Okay. And you're currently married now?

{¶107} "A. Yes, I am.

{¶108} "Q. And what's your husband's name?

{¶109} "A. Marcel Boast.

{¶110} "Q. Okay. How does he feel about him not being the love of your life?"

24

{¶111} This reality TV line of questioning's sole purpose was to distract from the two issues for jury determination – proximate cause and the extent of noneconomic damages suffered by Caroline.

### *Defense Counsel's Objection to Questioning of Home Health Care*

{¶112} Lastly, Ms. Ambrose contends in her eighth assignment of error that the trial court erred by sustaining defense counsel's objections to her testimony regarding Caroline's home health care on the ground the defendants never received any records of the home care and, thus, did not have the ability to cross-examine the witness about the care. More specifically, Ms. Ambrose's counsel asked whether she remembered "home health or some sort of home assistance coming?" She further argued to the court that Ms. Ambrose should have been allowed to testify to her own recollection, regardless of whether the home health records were offered into evidence. The magistrate sustained defense counsel's objection.

{¶113} While the simple question of whether she recollected seeing home health care being given to her mother should have been permitted, we cannot say that any error in sustaining the objection amounted to prejudicial error, particularly when the jury heard testimony from Ms. Ambrose's sister about home health care. *See Smith v. Peyatt*, 11th Dist. Trumbull No. 3759, 1988 WL 45173, *7 (May 6, 1988) ("While the court erred in sustaining the objection on this point, we do not perceive this to be prejudicial error").

{¶114} We find Ms. Ambrose's third and seventh assignments of error to have merit, and they are sustained.

25

Case No. 2021-P-0108

**Video Footage of the Collision**

{¶115} In Ms. Ambrose's fifth assignment of error, she contends the trial court erred in ruling that security camera video footage of the collision could not be authenticated by Mrs. Williamson.

{¶116} The admission of photographic evidence is left to a trial court's sound discretion. *Reinoehl v. Trinity Universal Ins. Co.*, 130 Ohio App.3d 186, 194, 719 N.E.2d 1000 (10th Dist.1998). Moreover, reviewing courts should be slow to interfere with a trial court's determination concerning the admissibility of evidence unless the court has clearly abused its discretion and the party has been materially prejudiced. *Id.*

{¶117} Pursuant to Evid.R. 901(A), "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Subsection (B) sets forth illustrations of authentication conforming with the rule, including testimony that a matter is what it is claimed to be (Evid.R. 901(B)(1)) and distinctive characteristics taken in conjunction with the circumstances (Evid.R. 901(B)(4)).

{¶118} Photographic evidence, including videotapes, can be admitted under a "'pictorial testimony'" theory or a "'silent witness'" theory. *Midland Steel Prods. Co. v. U.A.W. Local 486*, 61 Ohio St.3d 121, 129-130, 573 N.E.2d 98 (1991), quoting *Fisher v. State*, 7 Ark.App. 1, 5, 643 S.W.2d 571 (1982). Under the pictorial testimony theory, evidence is admissible "'when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness' personal observation.'" *Id.* at 129, quoting *Fisher* at 6. The person who took the photograph or video need not testify as long as the witness who does testify verifies that it is a "fair and accurate depiction." *State v. Freeze*, 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840, ¶ 66. Testimony

26

from an individual with personal knowledge of the surveillance system's recording process is not required. *See State v. Vermillion*, 4th Dist. Athens No. 15CA17, 2016-Ohio-1295, ¶ 17, 20.

{¶119} Under these circumstances, we agree with Ms. Ambrose that the video footage of the underlying collision was self-authenticating and that the trial court should have admitted the video. Mrs. Williamson identified herself, the location, and the incident and confirmed the footage was a "fair and accurate depiction" of the scene and of events. For example, in *State v. Johnson*, 140 Ohio App.3d 385, 747 N.E.2d 863 (1st Dist.2000), the First District disagreed with the defendant's argument that the state failed to properly authenticate a video that purported to show the defendant engaging in an illegal drug transaction. *Id.* at 393-394. The court noted that the officer who had been present during the drug transaction testified that the videotape "fairly and accurately depicted the events that occurred in the warehouse on the date in question." *Id.* at 393. *See also State v. Farrah*, 10th Dist. Franklin No. 01AP-968, 2002 WL 576110, *5 (Apr. 18, 2002) (testimony of investigating officer was sufficient to support a finding that the videotape was genuine and accurately depicted the store at the time of the robbery).

{¶120} Thus, Ms. Ambrose satisfied the low threshold necessary to demonstrate authenticity of the surveillance footage, and the trial court abused its discretion by failing to admit the video.

{¶121} Ms. Ambrose's fifth assignment of error has merit and is sustained.

**Motion in Limine Barring Any Mention of Insurance at Trial**

{¶122} In her second assignment of error, Ms. Ambrose contends the trial court erred by granting USAA General's motion in limine barring any mention of insurance at trial. She argues that this allowed USAA General, her mother's own insurance carrier, to

"hide behind the veil" of Mrs. Williamson at trial. She further contends that the presumed prejudicial effect that evidence of insurance coverage has on juries in determining liability does not apply in this case and that USAA General should have been identified to express to the jury that it had a "contractual and moral responsibility to provide for Caroline's injuries."

{¶123} A determination as to the admissibility of evidence is a matter within the sound discretion of the trial court. *Columbus v. Taylor*, 39 Ohio St.3d 162, 164, 529 N.E.2d 1382 (1988); *see also Calderon, supra.* Indeed, "[t]he issue of whether testimony is relevant or irrelevant, confusing or misleading, is best decided by the trial judge who is in a significantly better position to analyze the impact of the evidence on the jury." *Taylor* at 164. Consequently, a reviewing court will not reverse a lower court's determination as to the admissibility of evidence absent an abuse of discretion. As noted earlier, where the decision to admit evidence is purely a legal one since it involves solely a question of law, our standard of review is de novo. *Rilley, supra*, at ¶ 56.

{¶124} In *Gaul v. Westfield Natl. Ins. Co.*, 11th Dist. Lake No. 97-L-278, 1999 WL 689942 (Aug. 20, 1999), we addressed this issue directly, explaining:

{¶125} "As appellant contends, it is true that an action by an insured against its own insurance carrier for payment of underinsured motorist benefits is a cause of action sounding in contract. *Miller v. Progressive Cas. Ins. Co.* (1994), 69 Ohio St.3d 619, 624, 635 N.E.2d 317; *Motorists Mutl. Ins. Co. v. Tomanski* (1971), 27 Ohio St.2d 222, 223-224, 271 N.E.2d 924. Nevertheless, before an insured is legally entitled to recover under the insurance contract, the insured bears the burden of proving the elements of his or her claim as to the tortfeasor. *Kurrent v. Farmers Ins. of Columbus, Inc.* (1991), 62 Ohio St.3d 242, 245, 581 N.E.2d 533. Thus, the insured bears the burden of proving the amount of

28

damages. *Id.* at 245-246, 581 N.E.2d 533. The insured also bears the burden of demonstrating that her injuries were proximately caused by the negligence of the tortfeasor." *Id.* at *3.

{¶126} Thus, we could not find that the trial court erred by initially proceeding on a tort theory of liability and excluding the issue of insurance from the jury: "Appellant was required to prove her case as if she were proceeding against the tortfeasor directly. As such, appellant bore the burden of proving that her injuries were proximately caused by the accident and of proving the extent of her damages. Any contractual issues are irrelevant and premature until the liability and damage issues are resolved as to the tortfeasor." *Id.*

{¶127} Ms. Ambrose contends that the issue of insurance could be offered to prove another issue at trial, such as to rebut the improper questioning as to her motives in pursuing this case. In this case, however, the jury's only role was to determine proximate cause and the extent of any personal injury damage sustained by Ms. Ambrose as a result of the accident. *See id.*

{¶128} We fail to see why it was "critical" for Ms. Ambrose "to express to the jury that Defendant USAA had contractual and moral responsibility for Caroline's injuries" when USAA General's contractual obligation is not materially relevant to the tort issues being tried. Countering the profiteering motive defense with evidence of insurance would have only layered error upon error.

{¶129} Ms. Ambrose contends two Supreme Court of Ohio opinions support her position, i.e., *Ede v. Atrium S. OB-GYN, Inc.*, 71 Ohio St.3d 124, 642 N.E.2d 365 (1994), and *Davis v. Immediate Med. Servs., Inc.*, 80 Ohio St.3d 10, 684 N.E.2d 292 (1997). These cases, however, deal with the issue of experts who have a financial bias to testify

29

favorably for the defense. Thus, in *Ede*, the Supreme Court held that [i]In a medical malpractice action, evidence of a commonality of insurance interests between a defendant and an expert witness is sufficiently probative of the expert's bias as to clearly outweigh any potential prejudice evidence of insurance might cause." *Id.* at syllabus. In *Davis*, the Supreme Court reiterated its holding in *Ede* and took the financial bias of defense experts a step further, holding that "[w]here an expert has a financial incentive to be biased, the jury may determine whether that bias exists and how that bias affects all defendants who are contesting similar issues and who benefit from the expert's testimony, regardless of commonality of insurance." *Id.* at paragraph three of the syllabus. The issues in *Ede* and *Davis* are not relevant to this case. The "contractual and moral responsibility" of USAA General to provide for Caroline's injuries was simply not an issue at trial and was irrelevant to the issues the jury was being asked to decide.

{¶130} Ms. Ambrose's second assignment of error is without merit.

### Juror Bias

{¶131} Lastly, we consider Ms. Ambrose's fourth assignment of error, in which she contends the trial court erred by refusing to strike jurors for cause who displayed a clear bias against her case.

{¶132} The determination of whether a prospective juror should be disqualified for cause is a discretionary function of the trial court. Such determination will not be reversed on appeal absent an abuse of discretion. *Berk v. Matthews*, 53 Ohio St.3d 161, 559 N.E.2d 1301 (1990), at syllabus.

{¶133} As our review of the trial transcript reveals, a number of jurors had difficulty with the plaintiff's burden, i.e., a preponderance of the evidence. The first juror who struggled in the end stated her feeling about the concept of how "tipping the scales" would

30

depend on the evidence. The second juror did offer a definitive bias against the preponderance standard and was excused for cause. The third and fourth challenged jurors ultimately agreed that they would follow the law as instructed by the trial court.

{¶134} "As long as a trial court is satisfied, following additional questioning of the prospective juror, that the juror can be fair and impartial and follow the law as instructed, the court need not remove that juror for cause." *Westfall v. Aultman Hosp.*, 2017-Ohio-1250, 87 N.E.3d 735, ¶ 57 (5th Dist.), quoting *Giusti v. Felten*, 9th Dist. Summit No. 26611 & 26695, 2014-Ohio-3115, ¶ 7; *see Berk* at 169.

{¶135} The trial court found that those jurors who initially and definitively wanted a higher standard of proof agreed they could be fair impartial, and follow the law as instructed. Tactically, Ms. Ambrose's counsel exercised her peremptory challenges and simply ran out of peremptory challenges. Under these circumstances, we cannot find the trial court abused its discretion.

{¶136} Ms. Ambrose's fourth assignment of error is without merit.

{¶137} The judgment of the Portage County Court of Common Pleas is reversed, and this matter is remanded for a new trial in accordance with this opinion.

MATT LYNCH, J.,

JOHN J. EKLUND, J.,

concur.

31